## BRADFORD *v.* UNITED STATES.

### APPEAL FROM THE COURT OF CLAIMS.

No. 571. Submitted March 24, 1913.—Decided April 28, 1913.

One convicted of fraud in obtaining patents to public lands filed a petition for pardon which was granted on condition that he make full restitution to the satisfaction of the United States Attorney for the district in which the land was situated, in respect to all land, land titles or claims to land. He filed a relinquishment reserving under the laws of the State in which the land was situated the right to all improvements, the value thereof, with all taxes theretofore paid and to proceed against the United States for the same. He then brought suit in the Court of Claims therefor: *Held* that

Under the conditions of the pardon which he accepted no right was wrested from him; but, as he was to make voluntary restitution for his wrong-doing, he was not deprived of his lands or property nor evicted therefrom.

The power of the United States Attorney was limited by the subject-matter of the agency; and the fact that the restitution was to be made to his satisfaction did not enlarge his authority so as to bind the United States to make payments to one who was to make restitution to it.

Whatever rights the laws of the State might give under such conditions, the United States is not bound thereby, as no contract was established against it.

47 Ct. Cl. 141, affirmed.

Suit in the Court of Claims under the Tucker Act, so-called, to recover the sum of $15,791.92.

The petition was dismissed upon demurrer.

The facts, as alleged, are these: Appellant is the owner of tracts of land, each containing 160 acres, in the Parish of Ascension, State of Louisiana, which have been in his possession and ownership since, respectively, the tenth of October, 1898, fourteenth of September, 1901, and the twelfth of December, 1902. The lands at certain times prior to those dates were public lands of the United States and subject to entry under § 2289 of the Revised Statutes of the United States. One of the tracts was entered under such section by one Robert H. Cox, which entry resulted in a final certificate being issued to him on April 4, 1908, by the local land officers at New Orleans. On March 5, 1898, after he had made and submitted his final proof, he conveyed 100.45 acres of the land to one Uhlhorn, and on December 27, 1898, the latter sold and conveyed the same to appellant. On January 2, 1901, Cox conveyed the remaining lands to Leon and Julius Weil, with right of redemption. On certain subsequent dates Cox sold and relinquished to appellant his right of redemption.

On April 6, 1900, the Commissioner of the General Land Office suspended the entry of Cox upon the report of two special agents of the Land Office, but neither Cox nor appellant was notified of such suspension and no proceedings were had thereon until one Elijah Green filed in the local land office at New Orleans an application to contest Cox's entry, charging that it had been made in fraud of law, in that it had not been made for his own use and benefit, but for the benefit of appellant. The contest, under the rules of practice, was referred to the Commissioner of the General Land Office, who decided, on May 26, 1902, that Green's application could not be permitted for the reason that Cox's entry had been confirmed by § 7 of the act of Congress of March 3, 1891 (26 Stat. 1099, c. 561), more than two years having elapsed between the date of the issue of the final certificate of the entry, and

the date of Green's application.   The Secretary of the Interior affirmed the decision.

On February 16, 1903, Cox filed in the local land office at New Orleans, a pretended relinquishment of the entry, accompanied by his affidavit executed January 13, 1903, alleging that he had made the entry in fraud of the law for the benefit of appellant.   The papers were transmitted to the Commissioner of the General Land Office, and that officer on May 3, 1904, held the entry for cancellation and required appellant to apply for a hearing upon the truth or falsity of Cox's averments on pain of forfeiture of his rights under the entry.   Appellant applied for a hearing, denied by affidavit the averments of Cox, and set up as a defense, the order of the Commissioner and the Secretary of the Interior deciding that the entry had been confirmed by the act of Congress of March 3, 1891.   The hearing was never held or granted to appellant, and he has not up to this time been given an opportunity to show, as he could show if he were given opportunity, that Cox's charges were false in every particular and that he, appellant, was a *bona fide* purchaser for value of the lands embraced in the entry.   On the contrary, on April 26, 1905, an indictment was filed against him in the United States District Court for the Eastern District of Louisiana, charging him with an attempt to defraud the United States and alleging as an overt act his application for a hearing of the charges made by Cox.   The indictment was quashed October 31, 1907, by the United States District Attorney, with leave of the court.

On the twenty-fourth day of April, 1909, the Commissioner of the General Land Office, upon the consideration of the pretended relinquishment of Cox, canceled the entry and held that the lands were open to entry by other persons, and entries of the lands have been made.

The second tract described in the petition was entered under the Homestead Law, by one T. R. Cox, and

through certain mesne conveyances appellant became its owner.

On April 6, 1900, the Commissioner of the General Land Office, in consequence of the report of the agent of the office, suspended the entry, but no official notice of the suspension was given to appellant, and no further proceedings were ever had on the suspension of the entry.

On February 17, 1902, Cox, by a fictitious act of sale, for a nominal consideration, undertook to convey 140 acres of his entry to one S. B. Moore, for the purpose of defrauding appellant.

On March 19, 1902, one Leslie B. Wright filed a contest against the entry, making Cox, Moore and appellant parties. The local land office decided the contest in favor of appellant, holding that the conveyance to Moore was fictitious and fraudulent and was executed to defeat appellant's title. Wright appealed from the ruling to the Commissioner of the General Land Office, who affirmed the decision December 1, 1902.

On December 8, 1903, upon a request of a special agent of his office, the Commissioner recalled his decision, and on January 2, 1904, vacated the same without notice to any one or giving appellant an opportunity to meet the charges, the Commissioner stating that his action had been taken on facts disclosed by the special agent's reports made after the decision.

On April 26, 1905, an indictment under § 5440 of the Revised Statutes was filed against appellant, alleging as an overt act appellant's appearances before the local land office in the contest by Wright. No trial or other proceedings were had upon the indictment, and, on October 31, 1907, it was quashed by the District Attorney, with leave of the court.

On October 14, 1908, without further notice to appellant, the Commissioner of the General Land Office reversed the decision of the local land officers in the contest by

Wright and canceled the homestead entry of Cox, thereby undertaking to defeat appellant's right and title to the lands as a *bona fide* purchaser thereof. The Secretary of the Interior affirmed the decision.

Appellant, through his counsel, filed a motion for review, but was compelled to abandon the same by threats of criminal proceedings under § 5440 of the Revised Statutes of the United States.

The third tract was entered under the Homestead Law by one Nancy L. Cotton and final proof was made by her and a final certificate was issued to her. She sold the lands to one Fluker and the latter conveyed them to appellant.

On February 24, 1904, an indictment was filed against appellant and one Wright, in the Circuit Court of the United States for the Eastern District of Louisiana under § 5440 of the Revised Statutes. The indictment was, on motion of the District Attorney, quashed.

On May 28, 1903, a contest was instituted against the entry of Nancy L. Cotton, charging fraud in the initiation thereof. Notice of the contest was given to Wright, but not to her. Such proceedings were had thereon that a decision was rendered sustaining the contest and recommending the cancellation of the entry. Appellant appealed from the decision, but was forced to withdraw his appeal by threats of criminal prosecution. The entry was thereupon canceled and the lands subsequently entered by another, whose entry is now intact.

The petition alleges the good faith of appellant's purchase of all of the tracts, that he paid to the State of Louisiana taxes thereon, constructed roads to have access to them and cleared them of timber and otherwise improved them.

The petition further represents that appellant, being in the parish prison at the Parish of Orleans in the summer and fall of the year 1907 under proceedings in two criminal suits, neither of which had relation to or connection with

the lands covered by the entries described, and being above the age of seventy-six years, in bad health and in danger of his life, he applied for a pardon. The pardon was granted on the fifth of September of the same year, but the condition was imposed by W. W. Howe, the then District Attorney of the United States for said Eastern District of Louisiana, that appellant should relinquish to the United States the lands described in the entries.

The pardon is attached to the petition and recites appellant's conviction for violation of § 5440, Revised Statutes, in two cases, in each of which he was sentenced to imprisonment for one year, and in one, to pay a fine of $3,000 and in the other a fine of $2,500. The sentences were commuted to the payment of the fines and costs "upon condition that he [appellant] shall have previously made full restitution to the satisfaction of the United States District Attorney for the Eastern District of Louisiana, in respect to all lands, land titles or claims to lands."

Thereupon appellant executed releases of the three tracts, which were the same, the description of the lands only being different. They were as follows:

"I hereby relinquish to the United States, all my right, title and claim in and to the following-described lands, to-wit: . . . reserving, under the laws of Louisiana, the right to all improvements, or the value thereof, with all taxes heretofore paid, and to proceed against the United States for the same."

Appellant cleared portions of the lands to put them in fit condition for cultivation and also built two good dwelling houses thereon, all which were in a good state of preservation at the time he signed the relinquishment to the Government. Appellant also had made other improvements "usual and necessary for the profitable and successful cultivation and carrying on of a farm or plantation in that part of Louisiana "

Attached to the petition are exhibits specially describing the improvements and showing the amount expended on the first tract to have been $8,741.60; on the second tract, $5,765; on the third tract, $798.00, and $487.32 taxes.

The Government accepted the relinquishment and permitted the lands to be entered for homestead purposes by other parties.

It is alleged that the United States, by accepting the relinquishment of the lands, became bound and contracted with appellant to pay to and reimburse him for the price and value of the improvements made by him on the lands and the taxes paid by him. Certain articles of the Code of Louisiana are set out which, it is alleged, existed and that they were specifically relied on by appellant and adopted and accepted as the measure of appellant's rights in the premises by the United States District Attorney, and by the Land Department of the United States, in accepting and filing the several relinquishments, whereby, it is further alleged, the United States contracted to pay petitioner the amount and value of his improvements made upon the lands, and the taxes.

*Mr. Harvey M. Friend* for appellant.

*Mr. Assistant Attorney General John Q. Thompson* and *Mr. George M. Anderson* for the United States.

MR. JUSTICE MCKENNA delivered the opinion of the court, after stating the facts as above.

It will be observed from the allegations of the petition that appellant not only had been convicted of defrauding the Government of certain lands, but that he was charged with fraud in regard to the lands which he relinquished and on account of which he contends a contract arose between him and the Government. This must be regarded

as an element in the consideration of the case. Appellant was a convicted wrongdoer in two cases; he was a suspected wrongdoer in the other cases, and from that standpoint the Government dealt with him; and he was a petitioner for a pardon. The pardon was granted, but upon terms. He was to make restitution for his wrongdoing. The defrauded Government was to be made whole. And not by wresting from him a right, either directly or through the coercion of circumstances, but by his voluntary reparation, securing thereby the Government clemency.

Appellant, therefore, was not deprived of his lands in the sense for which he contends, nor evicted from them. He voluntarily relinquished them for a benefit to himself. But he asserts that the relinquishment was upon conditions especially reserving rights which put the United States under indebtedness to him. The contention is anomalous. Convicted of two offenses and under sentence for them, and suspected of others, he asks that not only the punishment may be remitted, but that reimbursement of expenses and outlays be made him. And this he bases on the agency which he contends was given the District Attorney and the effect of the laws of Louisiana.

Plainly the power of the District Attorney was limited by the subject-matter of his agency. He was to secure restitution, not to engage for payments by the United States, amounting to over $15,000—payments for something which could be of no benefit to the United States, which would be mere uncompensated outlay, not reparation received from appellant but indemnity given to him. And it is to be observed that the restitution was to be "in respect to all lands, land titles or claims to lands." It is true that the restitution was to be made to the "satisfaction" of the District Attorney, but this did not enlarge his agency to do more than accept restitution.

As we have seen, appellant had been convicted in cer-

tain cases, he had been accused in others, charged with fraud in the entries here involved, found to have practiced it. This being the situation, the agency conferred upon the District Attorney comprehended such adjustments as would free the lands from the incumbrances of appellant's acts. The District Attorney had not the power, as appellant contends, as an individual in like situation. We are not therefore called upon to consider what rights the laws of Louisiana gave to appellant or whether they could give any, nor whether, if the United States is not bound by the condition in the relinquishments, the latter are void. It is only necessary to decide that appellant has not established a contract against the United States.

*Judgment affirmed.*

THE CHIEF JUSTICE took no part in the decision.