Argued and submitted March 7, affirmed May 7, 1985

## STATE OF OREGON,
*Respondent on Review,*

*v.*

## DOUGLAS LELAND HART,
*Petitioner on Review*

(CC 83-05-32325; CA A31581; SC S31362)

699 P2d 1113

Ernest E. Estes, Deputy Public Defender, Salem, argued the cause for petitioner on review. With him on the petition for review was Gary D. Babcock, Public Defender, Salem.

Brenda J. Peterson, Assistant Attorney General, Salem, argued the cause for respondent on review. With her on the response to the petition for review were Dave Frohnmayer, Attorney General, James E. Mountain, Jr., Solicitor General, and Stacia E. Reynolds, Certified Law Student, Salem.

JONES, J.

## JONES, J.

Defendant was convicted of assault in the second degree and sentenced to a 10-year term of imprisonment. Defendant was also ordered to pay restitution in the amount of $224,462.80 for past and future expenses related to injuries the victim suffered due to defendant's criminal conduct. The Court of Appeals affirmed without opinion both defendant's assault conviction and the restitution order. Defendant raises both state and federal constitutional challenges to Oregon's restitution statutes.

## THE FACTS AND PROCEEDINGS

Defendant was charged with the crime of assault in the second degree. Defendant waived his right to a jury trial and requested a trial on stipulated facts. The trial court found defendant guilty of second degree assault by knowingly causing severe physical and mental injuries to the victim, defendant's 18-month old son. The injuries included permanent paralysis of the left side of the victim and permanent brain damage.

At the sentencing hearing, Susan Wilson, the victim's Children's Services Division (CSD) caseworker, testified regarding the cost of past and future expenses necessary for the treatment of the victim. These expenses were directly related to the victim's injuries caused by the defendant's assault.

The court sentenced defendant to 10 years' imprisonment with the requirement that he serve a minimum of five years before becoming eligible for parole. The court also continued the sentencing hearing, at defendant's request, for a hearing relating to restitution. The defendant requested a jury for the restitution hearing. The court denied the request and proceeded under ORS 137.106 which sets forth the procedure for such hearings. At the resitution hearing, following Ms. Wilson's testimony and while she was still available for cross-examination of the amounts of restitution requested, the court received in evidence a report from Meredith Morrison, Victim Assistant, a staff member of the District Attorney for Multnomah County, setting forth incurred and future medical expenses for the victim totaling $224,462.80.

The court ordered defendant to pay restitution to

CSD, a state agency responsible for the victim's care, in the amount of $224,462.80 at the rate of not less than $100 per month commencing 60 days after defendant's release from custody. The court found that $224,462.80 was the reasonable value of past and future expenses to be incurred by CSD during the childhood of the defendant's son. The court also found that the defendant had the ability to meet his $100 monthly instalment payments as fixed by the restitution order.[1] Defendant has been employed over the years in millwork and electronics.

## RESTITUTION AS A CRIMINAL SENTENCING SANCTION

An introduction in a publication of the National Institute of Justice, "Compensating Victims of Crime: An Analysis of American Programs" (1983), reports:

> "In a wide variety of societies throughout history, restitution has been a central principle of criminal law. Failure to make restitution could result in retributory punishment of the offender by the victim or the victim's kin group. Over time, as the power of governments increased, the state sought to obtain the sole power of retribution in order to reduce the violence associated with citizens 'taking the law into their own hands.' * * *" (Footnote omitted.)

*See also* Edelhertz and Geiz, Public Compensation to Victims of Crime (1974); Carrow, *Crime Victim Compensation: Program Model* (U.S. Government Printing Office 1980); Hoelzel, *A Survey of 27 Victim Compensation Programs,* 63 Judicature 10 (1980).

Some 20 years ago, Professor Marvin Wolfgang commented in a Minnesota Law Review article about the change in sanctions from restitution to fines:

> "Gradually the social group began to take charge of punishment, and wrongs came to be regarded as injuries to the

---

[1] ORS 161.675(1) provides:

"When a defendant is sentenced to pay a fine or costs or ordered to make restitution, as defined in ORS 137.103, the court may order payment to be made forthwith or within a specified period of time or in specified instalments. If a defendant is sentenced to a term of imprisonment, an order of payment of a fine, costs or restitution shall not be enforceable during the period of imprisonment unless the court expressly finds that the defendant has assets to pay all or part of the amounts ordered at the time of sentencing."

group or to the state. The king claimed a part of this [restitution] payment or an additional payment for the participation of the state in the trial and for the injury done to the state by the disturbance of the peace. About the twelfth century the victim's share began to decrease greatly * * * until finally the king took the entire payment.

"Thus, the right of the victim to receive compensation directly from the one who caused him personal harm in an assault was transferred to the collective society where it remains to this day. * * *" Wolfgang, *Victim Compensation in Crimes of Personal Violence,* 50 Minn L Rev 223, 228 (1965).

A recent Harvard Law Review Note echoed the historical fact that there is nothing new about restitution as a sentencing sanction and that restitution as a sanction is being resurrected throughout the country. The author noted that far from being a novel approach to sentencing, restitution has been employed as a punitive sanction throughout history. In ancient societies, before the conceptual separation of civil and criminal law, it was standard practice to require an offender to reimburse the victim or his family for any loss caused by the offense.[2] The author wrote:

"* * * The primary purpose of such restitution was not to compensate the victim, but to protect the offender from violent retaliation by the victim or the community. It was a means by which the offender could buy back the peace he had broken. As the state gradually established a monopoly over the institution of punishment, and a division between civil and criminal law emerged, the victim's right to compensation was incorporated into civil law. Although this development led to a decline in the use of restitution as a form of punishment, restitution continued to be available on a limited basis in the Anglo-American criminal system. Many of the earliest penal codes in the United States included restitution provisions, and in 1913 the Supreme Court, in *Bradford v. United States,* [228 US 446, 33 S Ct 576, 57 L Ed 912 (1913)], sanctioned restitution as a condition on a pardon. By providing for restitution in the penal sections of state codes and

---

[2] The Torah, the Code of Hammurabi, ancient English and Germanic law, Greek law, and Roman law all contained graduated scales of compensation for victims of crime. *See* Schafer, Restitution to Victims of Crime 3-7 (1960); Jacob, *Reparation or Restitution by the Criminal Offender to His Victim: Applicability of an Ancient Concept in the Modern Correctional Process,* 61 J Crim L. 152, 154-55 (1970); Laster, *Criminal Restitution: A Survey of Its Past History and an Analysis of Its Present Usefulness,* 5 U Rich L Rev 71, 72-73 (1970).

authorizing it as a sentencing option in addition to fines or imprisonment or as a condition on parole or probation, today's legislatures have preserved restitution as a criminal penalty." Note, *Victim Restitution in the Criminal Process: A Procedural Analysis,* 97 Harv L Rev 931, 933-34 (1984) (footnotes omitted).

## THE OREGON RESTITUTION STATUTES

In 1977, the state legislature enacted the present restitution statutes. Or Laws 1977, ch 371, §§ 1, 2, 6, 7. ORS 137.106 provides that a defendant may be required to pay restitution to crime victims:

"(1) When a person is convicted of criminal activities which have resulted in pecuniary damages, unless the present-ence investigation report contains such a presentation, the district attorney shall investigate and present to the court, prior to or at the time of sentencing, evidence of the nature and amount of such damages. In addition to any other sentence it may impose, the court may order that the defendant make restitution to the victim.

"(2) In determining whether to order restitution which is complete, partial or nominal, the court shall take into account:

(a) The financial resources of the defendant and the burden that payment of restitution will impose, with due regard to the other obligations of the defendant;

(b) The ability of the defendant to pay restitution on an instalment basis or on other conditions to be fixed by the court; and

(c) The rehabilitative effect on the defendant of the payment of restitution and the method of payment.

"(3) If the defendant objects to the imposition, amount or distribution of the restitution, the court shall at the time of sentencing allow the defendant to be heard on such issue."

ORS 137.103 defines "criminal activities," "pecuniary damages," "restitution" and "victim":

"(1) 'Criminal activities' means any offense with respect to which the defendant is convicted or any other criminal conduct admitted by the defendant.

"(2) 'Pecuniary damages' means all special damages, but not general damages, which a person could recover against the defendant in a civil action arising out of the facts or events

constituting the defendant's criminal activities and shall include, but not be limited to, the money equivalent of property taken, destroyed, broken or otherwise harmed, and losses such as medical expenses and costs of psychological treatment or counseling.

"(3) 'Restitution' means full, partial or nominal payment of pecuniary damages to a victim. Restitution is independent of and may be awarded in addition to punitive compensation awarded under ORS 137.101.

"(4) 'Victim' means any person whom the court determines has suffered pecuniary damages as a result of the defendant's criminal activities; 'victim' shall not include any coparticipant in the defendant's criminal activities."[3]

The present restitution statutes were enacted as a response to this court's interpretation of a former restitution statute, ORS 137.540(10), in *State v. Stalheim,* 275 Or 683, 552 P2d 829 (1976).[4] Former ORS 137.540(10), passed by the legislature in 1969, authorized a sentencing court to impose restitution only as a condition of probation. That statute authorized a sentencing court to require as a condition of probation that defendant

"* * * make reparation or restitution to the aggrieved party for the damage or loss caused by [the] offense, in an amount to be determined by the court."

The terms "reparation or restitution" and "aggrieved party" were not further defined.

In *Stalheim,* this court limited the application of ORS 137.540(10) both as to persons entitled to receive restitution and as to the nature of the restitution which properly could be

---

[3] Defendant does not challenge CSD's status as a "victim" in this case, or that some of the damages relate to future expenses.

[4] Edward Sullivan, Legal Counsel to the Governor and Chairman of the Governor's Task Force on Corrections, explained the new 1977 restitution statutes with the following introduction:

"House Bill 2012 relates to restitution. This bill came out of the Interim Committee of Judiciary. It is an attempt to reverse the decision of the Supreme Court in the case of *Stalheim vs. State,* last August. The decision was that only the direct victims of an offense could receive restitution. What this bill does is to allow the victim, the victim's family and injured third parties to collect restitution in manner which is prescribed either by [the] court as a part of the sentence or by the Parole Board as a condition of parole. All the judicial and due process safeguards which are necessary are worked into this bill. * * *" Minutes, Senate Committee on the Judiciary 5 (May 31, 1977).

ordered. This court held that a trial judge could not award unliquidated damages as an item of restitution since it would leave the trial judge in the difficult position of performing a typical jury function, that of assigning value to losses such as pain and suffering, decreased earning capacity and loss of consortium. We construed the statute to authorize restitution only for liquidated or easily measurable losses resulting from the charged offense.

The present restitution statutes were intended to codify parts of the *Stalheim* decision. ORS 137.103(2) codifies *Stalheim* by limiting permissible items of resitution to "pecuniary damages," defined as special damages recoverable against the defendant in a civil action arising from defendant's criminal activities.

ORS 137.109(1) specifically provides that a restitution order does not limit or impair the right of a person injured by a defendant's criminal activities to sue and recover damages from the defendant in a civil action. The statutes do circumscribe the authority of the court:

> "* * * The court does not have authority to require whatever recompense it deems would have rehabilitative and deterrent effect. Its authority is limited to what would otherwise be special damages recoverable in civil proceedings by specified persons or entities. * * *" *State v. Dillon,* 292 Or 172, 180, 637 P2d 602 (1981).

■ ORS 137.103(2) specifically restricts recovery to special damages and, therefore, applies only to expenses actually incurred and to those expenses which are easily measurable, *see State v. Dillon,* 292 Or at 174, and, as in this case, those future expenses reasonably predictable, *see Harris v. Hindman,* 130 Or 15, 278 P 984 (1929). The restitution ordered was for expenses, not pain and suffering, loss of earning capacity, disability and the like. The defendant in this case does not challenge the specificity of the future expenses, but only that the total amount constituted an "excessive fine" in violation of the Oregon Constitution.

■ ORS 137.106 makes clear that the amount of restitution to which a victim might be entitled does not automatically translate into what the court may require the defendant to pay. The actual amount of restitution imposed on the defendant is mitigated by subsections (2)(a)-(c). The court

must consider the financial resources and the general ability of the defendant to meet the instalment payments. The rehabilitative effect on the defendant should also be taken into account by the court. There is an acknowledged need to balance the offender's economic circumstances, the victim's interest in the recovery and the punitive and reformative goals of these statutes. This is explicit in ORS 137.106(2), which authorizes the court to impose "complete, partial or nominal" restitution orders.

## THE CONSTITUTIONAL ARGUMENTS

Defendant challenges the trial court's restitution order on state and federal constitutional grounds.

*Denial of criminal jury trial as provided by Article I, section 11, of the Oregon Constitution*

Citing *State v. Quinn,* 290 Or 383, 623 P2d 630 (1981), and *State v. Wedge,* 293 Or 598, 652 P2d 733 (1982), defendant argues that the determination of the amount of damages to be awarded in a restitution hearing is closer to a determination of an element of the crime than to a characterization of the defendant and, therefore, requires a criminal jury trial under Article I, section 11, of the Oregon Constitution.[5]

In *State v. Quinn, supra,* we stated the fundamental proposition that a criminal defendant is entitled to have all the elements of a crime decided by a jury. For this reason, this court struck down a death penalty statute, ORS 163.116, as unconstitutional. The statute provided that when a defendant was convicted of intentional murder, the judge was to determine whether defendant deliberately committed the homicide. On a finding of deliberateness, and additional findings regarding the character of the defendant, the court was required to impose a sentence of death. If, however, the judge did not find that the homicide was deliberate, a life sentence was to be imposed. In *State v. Wedge, supra,* we characterized the holding in *Quinn* as relating to *elements* of the crime charged. In *Wedge,* we held that the use or threatened use of a firearm

---

[5] Article 1, section 11, of the Oregon Constitution provides:

"In all criminal prosecutions, the accused shall have the right to public trial by an impartial jury * * *."

during the commission of a crime is a finding that must be made by the jury:

> "In *Quinn* we stated as a simple principle that facts which constitute the crime are for the jury and those which characterize the defendant are for the sentencing judge. The application of this simple principle is not always so simple. *The present fact to be found describes an act in the commission of the crime which determines the maximum penalty to which the defendant is subject.* In order to decide whether a jury determination is required in the present case, one must look beyond this categorization. We also said in *Quinn* that facts which go to the criminal acts for which a defendant is to be punished must be proved to a jury's satisfaction unless admitted or waived. *Quinn, supra,* 290 Or at 406.

> "The use or threatened use of a firearm is a finding that goes to the criminal act for which this defendant is punished, and thus is closer to an element of the crime than to a characterization of the defendant. * * *" *Wedge,* 293 Or at 607 (emphasis added).

In the instant case, defendant was convicted of assault in the second degree which is defined as "[i]ntentionally or knowingly caus[ing] serious physical injury to another." ORS 163.175(1)(a). "Serious physical injury" is defined by ORS 161.015(7) as "physical injury which creates a substantial risk of death or which causes serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ." The seriousness of the injury inflicted by the defendant is an element of the crime of assault, but the monetary amount of the medical and other out-of-pocket expenses associated with the injury is not. The monetary cost of the injury is neither an element of the crime nor "an act in the commission of the crime." *Wedge,* 293 Or at 406. Therefore, while the amount of the restitution order might be termed an element of sentencing, it is not an element of the crime of assault. We hold that defendant was not entitled to a criminal jury trial under the Oregon Constitution on the issue of restitution.

*Denial of civil jury trial as provided by Article I, section 17, of the Oregon Constitution*

In the alternative, defendant maintains that he was entitled to a civil jury under Article I, section 17, of the Oregon

Constitution.[6] Defendant contends that restitution is a form of civil compensation and is not a proper criminal sanction, and that sentencing procedures to determine the amount of compensation violate the constitutional procedural safeguards of the right to trial by jury.

■　This state's statutory restitution scheme is a peculiar blend of both civil and criminal law concepts but, as we noted in *State v. Dillon, supra,* 292 Or at 179, restitution is not intended to be equivalent or alternative to a civil award:

"* * * The theory of restitution is penological: It is intended to serve rehabilitative and deterrent purposes by causing a defendant to appreciate the relationship between his criminal activity and the damage suffered by the victim. To make this relationship evident to the defendant, the permissible amount of restitution is measured by the injury to the victim. The statute borrows from civil law in that it limits the type and amount of restitution to that which could be recovered as special damages in a civil suit against the defendant. * * *"

■　The purpose of ordering restitution at a sentencing hearing is not to provide full compensation of all damages to victims of crime. Rather, the restitution is to be ordered only as it is relevant in correcting defendant's behavior and as a step to accomplishing the traditional goals of sentencing such as rehabilitation of the defendant and deterrence to impress upon the defendant the seriousness and cost of his offense.

House Bill 2012, which was codified in the present restitution statutes, ORS 137.103 to 137.109, was referred to the House Committee on the Judiciary. In introducing the bill to the committee, Mr. Bromka, Legal Counsel for the Interim Committee on the Judiciary, explained the operation of the bill. The minutes state:

"This bill takes much of its language and what it does * * *, in theory, may help rehabilitate the offender; there is a strong feeling that if the offender is made to suffer a loss and pay for the responsibility of the loss he caused, there is greater likelihood he'll not do it again. * * *" Minutes, House Committee on Judiciary 3 (January 18, 1977).

At another committee meeting, Mr. Bromka explained the definition of "restitution" in HB 2012 as follows:

---

[6] Article I, section 17, of the Oregon Constitution provides:

"In all civil cases the right of Trial by Jury shall remain inviolate * * *."

"MR. BROMKA said the point of the definition of restitution is a red flag to the courts that restitution does not mean restitution in full or partial restitution. It's any form of restitution that brings home to the defendant that they damaged an individual and they should make some sort of recompense to the individual. * * *" Minutes, House Committee on Judiciary 12 (April 29, 1977).

We adhere to our view expressed in *Dillon:*

"* * * [R]estitution was clearly not intended to be the equivalent of a civil award. For example, it does not necessarily fully compensate the victim. There are no general or punitive damages. Unlike a civil recovery, defendant cannot be required to pay damages beyond his ability to pay. Instead, ORS 137.109(1) specifically provides that a restitution order does not impair a person's right to bring a civil action against the defendant, although there is a credit for amounts paid as restitution, and some collateral estoppel effect under ORS 137.109(2). The legislative history makes clear that the statute's purposes are penal, not compensatory. Thus, restitution must be understood as an aspect of criminal law, not as a quasi-civil recovery device." 292 Or at 179-80 (footnote omitted).

Defendant was not entitled to a civil jury trial on the issue of restitution.

*Denial of "due process" as provided by Article I, sections 1, 10 and 20, of the Oregon Constitution*

Defendant also contends that the Oregon restitution statutes violate his "due process" rights asserted to be guaranteed by Article I, sections 1, 10 and 20,[7] of the Oregon

---

[7] Article I, section 1, of the Oregon Constitution provides:

"We declare that all men, when they form a social compact are equal in right: that all power is inherent in the people, and all free governments are founded on their authority, and instituted for their peace, safety, and happiness; and they have at all times a right to alter, reform, or abolish the government in such manner as they may think proper.—"

Article I, section 10, of the Oregon Constitution provides:

"No court shall be secret, but justice shall be administered, openly and without purchase, completely and without delay, and every man shall have remedy by due course of law for injury done him in his person, property, or reputation.—"

Article I, section 20, of the Oregon Constitution provides:

"No law shall be passed granting to any citizen or class of citizens privileges, or immunities, which, upon the same terms, shall not equally belong to all citizens.—"

Constitution because the statutes fail to provide adequate standards relating to evidence, discovery and notice.

The applicability of Article I, section 1, is not apparent, and defendant makes no effort to explain it. Article I, section 10, guarantees injured persons a remedy in due course of law for their injuries; it is not a "due process" clause.[8] *Cole v. Department of Revenue,* 294 Or 188, 191, 655 P2d 171 (1982), and cases there cited. It is particularly ironic to see this guarantee of a remedy for injuries cited on behalf of a defendant against a sentence to pay restitution to his victim. Nor does defendant elaborate on his citation of Article I, section 20, which deals with equality of privileges and immunities. No claim of unequal sentencing practices is presented here. *Cf. State v. Clark,* 291 Or 231, 630 P2d 810 (1981).

*Excessive fine in violation of Article I, section 16, of the Oregon Constitution*

Defendant's next state constitutional challenge to the restitution statutes is that the restitution order in this case violates Article I, section 16, of the Oregon Constitution because it constitutes an "excessive fine." Article I, section 16, provides in relevant part:

> "Excessive bail shall not be required, nor excessive fines imposed. Cruel and unusual punishments shall not be inflicted, but all penalties shall be proportioned to the offense. * * *"

Restitution orders are not denominated as "fines" and may be imposed in addition to fines. It therefore may be argued that the constitutional limitation of Article I, section 16, does not apply to restitution orders at all. But whether or not it is controlled by Article I, section 16, any sentence, including the amount of restitution ordered, is subject to appellate review of sentences for excessiveness under ORS

---

[8] We assume that in using the phrase "due process" defendant invokes the last clause of Article I, section 10, and not that section's guarantee that "justice shall be administered * * * completely." We express no opinion regarding what rights this language implicates.

138.040,[9] review that is not limited to constitutional standards.

▮▮ ▮▮ In order to be an effective sentence, the amount of the restitution order must have a reasonable relationship to the criminal conduct of the offender. In this case, the amount of the restitution ordered, even though a large sum, does reasonably relate to the defendant's conduct and the goals of sentencing. The amount of money awarded by the trial judge in this case was for present and future expenses only. It in no way measured nor amounted to the almost immeasurable harm the offender caused to his vulnerable victim. The statutory fine could have been $100,000. ORS 161.625. The payment schedule arranged by the judge was most modest. The restitution ordered under the circumstances in this case was not excessive. Further, we note that in the event of unforeseen circumstances the defendant has a right to petition to have all or part of the restitution order set aside. ORS 161.685(5).[10]

### Defendant's federal constitutional challenge

15. Defendant finally contends that Oregon's restitution statutes violate his right to a criminal jury trial under the Sixth and Fourteenth Amendments to the United States Constitution. For the same reasons we noted above, this argument also fails. The Supreme Court of the United States held in *Proffitt v. Florida,* 428 US 242, 252, 96 S Ct 2960, 49 L Ed 2d 913 (1976), that under the United States Constitution there is no right to a jury in a sentencing hearing even in a

---

[9] ORS 138.040 provides in pertinent part:

"The defendant may appeal to the Court of Appeals from a judgment on a conviction in a district or circuit court, including a judgment where the circuit court imposes a sentence which is cruel, unusual or excessive in light of the nature and background of the offender or the facts and circumstances of the offense * * *. If in the judgment of the appellate court the punishment imposed by the sentence appealed from is cruel, ususual or excessive, the appellate court shall direct the court from which the appeal is taken to impose the punishment that should be administered."

[10] ORS 161.685(5) provides:

"If it appears to the satisfaction of the court that the default in the payment of a fine or restitution is not contempt, the court may enter an order allowing the defendant additional time for payment, reducing the amount thereof or of each instalment or revoking the fine or order of restitution or the unpaid portion thereof in whole or in part."

capital case. Because a restitution hearing is part of a defendant's sentencing, defendant has no constitutional right to a criminal jury trial under the United States Constitution. *United States v. Satterfield,* 743 F2d 827 (11th Cir 1984).[11]

The Court of Appeals is affirmed.

---

[11] Defendant relies on *United States v. Welden,* 568 F Supp 516 (ND Ala 1983), to support his contentions that the Oregon restitution statutes violate his federal constitutional rights. In *Welden,* the district court concluded that the 1982 Victim and Witness Protection Act violated the Fifth, Seventh and Fourteenth Amendments to the United States Constitution. The district court's decision on that issue was reversed on appeal in *United States v. Satterfield,* 743 F2d 827, 836-43 (11th Cir 1984). *See also United States v. Brown,* 744 F2d 905 (2nd Cir), *cert den* ____ US ____ (105 S Ct 599) (1984); *United States v. Florence,* 741 F2d 1066 (8th Cir 1984).