Argued and submitted January 6, reversed and remanded February 19, 2015

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

KYLE DAVID PATTERSON,
*Defendant-Appellant.*

Lane County Circuit Court
201217651; A154021

344 P3d 497

Kevin T. Lafky argued the cause for appellant. With him on the briefs were Daemie M. Kim and Lafky & Lafky.

James A. Aaron, Assistant Attorney General, argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Rebecca M. Auten, Assistant Attorney General.

Before Sercombe, Presiding Judge, and Hadlock, Judge, and Tookey, Judge.

HADLOCK, J.

## HADLOCK, J.

Defendant was convicted of four felonies after he entered guilty pleas, and the trial court imposed probationary sentences. Defendant later admitted that he had violated two of the conditions of his probation. The trial court revoked defendant's probation and purported to sentence him on each of the four underlying convictions. Accordingly, as part of its judgment on revocation, the court "sentenced" defendant to 60 days of jail on one of the convictions and to 18-month prison terms (plus post-prison supervision) on each of the other three convictions. After finding that "this all did not occur in one continuous course of conduct," the court ordered two of the 18-month prison terms to be served consecutively pursuant to ORS 137.123. Defendant appeals, challenging imposition of the consecutive terms of incarceration. As explained below, we conclude that the trial court erred by imposing consecutive sentences under ORS 137.123. Indeed, the court erred by sentencing defendant at all, as defendant had already been sentenced on his felony convictions when he received his probationary sentences at the time of conviction. Instead of sentencing defendant when it revoked his probation, the trial court should have imposed revocation sanctions. We reverse and remand for the trial court to do so.

The facts pertinent to this appeal are procedural and undisputed. Defendant was charged with two counts of unauthorized use of a vehicle (UUV), second-degree burglary, and first-degree criminal mischief, all Class C felonies. One of the UUV counts (Count 1) related to defendant's unlawful use, in June 2012, of a truck that belonged to Lithia Motors. The prosecutor later asserted (and defendant did not dispute) that defendant committed that crime by entering the Lithia Motors lot through an unlocked fence, taking keys to the truck, and driving the truck off the lot, causing some damage to it. The other three charges—Counts 2 (burglary), 3 (UUV), and 4 (criminal mischief)—related to events that occurred one night in August 2012. The prosecutor asserted (again without contradiction by defendant) that defendant returned to Lithia Motors, took keys to another truck, and drove the truck off the lot by crashing it through a locked gate, causing "pretty extensive damage."

The state and defendant entered plea negotiations, which culminated in defendant signing a plea petition that described the negotiated agreement as follows:

"[T]he parties agree that counts 2, 3 and 4 [related to the August incident] fall under BM 57[1] with each count having a presumptive 18 month prison sentence. The defense represents that defendant has reunited with his parents, enrolled in school, and [is] back on track. Accordingly, the state and defendant agree to a downward dispositional departure to probation for a period of 36 months on all counts. Defendant will be exempt from structured sanctions so that any probation violation will be returned to the court at which time defendant can expect that the presumptive sentences will be imposed. The parties agree to 20 days jail and 100 hours of community service as a condition of probation, as well as restitution * * *."

The trial-court file includes another, unsigned document titled "WAIVER OF INDICTMENT AND PLEA," which includes a statement—apparently related to the parties' negotiations—that defendant would "go to the Department of Corrections for 18 months for any violations of probation."

During a change-of-plea hearing, the court questioned defendant about his desire to waive his right to a jury trial and to enter a guilty plea, and it cautioned defendant that it had not agreed to be bound by the parties' sentencing recommendation. The court also ensured that defendant understood that, by signing the plea petition, he would acknowledge that Counts 2, 3, and 4 "would fall under Ballot Measure 57, with each having a presumptive prison sentence of 18 months." The court further explained that, if it sentenced defendant to probation and his probation was later revoked, defendant would "come back to this Court for sentencing to prison." Defendant then pleaded guilty to each of the four counts and the case proceeded to sentencing.

---

[1] We understand "BM 57" to refer to Ballot Measure 57 (2008), which, among other things, increased the presumptive sentences for people convicted of certain property crimes who have certain previous convictions. Or Laws 2008, ch 14, § 7. The court also referred to "Ballot Measure 57" during the change-of-plea hearing, as well as to ORS 137.717(1)(b), where the pertinent parts of the measure are codified.

After hearing defendant's explanation of what led him to commit the crimes, the court announced that it would follow the parties' sentencing recommendation. Speaking directly to defendant, however, the court emphasized that, if defendant's probation was revoked in the future, the court would "send [him] to prison" without "a second chance." After orally describing the probationary sentences that it would impose, the court again explained to defendant that, if he violated his probation and the probation was revoked, he would be returning to court "for sentencing in the amount of at least 18 months of prison with the Department of Corrections." The court said that it did not know "if any one of them [would] be run consecutive, but at least 18 months with the Department of Corrections." Defendant acknowledged the court's explanation.

The court then entered a judgment that reflected defendant's guilty pleas and that sentenced defendant in accordance with the parties' negotiated agreement. Thus, on Count 1, the court sentenced defendant to 36 months of probation (a durational departure from the presumptive sentence), with 20 days of jail time and 100 hours of community service. On Counts 2, 3, and 4, the court found that "the presumptive sentence [of incarceration] prescribed in ORS 137.717" applied because of "defendant's previous criminal convictions," but it imposed dispositional departure sentences of 36 months of probation on each count, with 20 days of jail time (the time on all counts to be served concurrently). Finally, the court ordered defendant to pay fines and restitution. The court imposed general conditions of probation, including that defendant not possess weapons, firearms, or dangerous animals. The judgment also memorialized the trial court's authority "to impose sanctions" for any probation violation; it did not state that the trial court would have authority to impose sentence if it revoked defendant's probation (as explained below, any such statement would have been incorrect).

About five months after the judgment was entered, the trial court issued an order to show cause why defendant's probation should not be revoked, based on the state's

allegations that defendant had violated his probation in two ways: by failing to pay fines or restitution and by possessing weapons, firearms, or dangerous animals. At a hearing on the show-cause order, defendant admitted those allegations. The court then asked the parties whether there were "any negotiations in this case." Defense counsel responded that the state "would agree to not seek greater than 36-month sentence" and defendant was "free to argue for less." Defendant reiterated his admission to the two probation violations.

Later that day, the parties appeared before the judge who originally had imposed the probationary sentences, based on that judge's desire "to do this sentence." At that hearing, the prosecutor asserted that "things [had] not gone well" for defendant, who had been accused of stealing another truck as well as an expensive piece of jewelry, arming himself with pepper spray, and not paying restitution. The prosecutor recommended that the court order defendant to serve 36 months in prison and one year of post-prison supervision.

For the remainder of the hearing, the prosecutor, defense counsel, and the trial court apparently operated under the assumption that the court would be imposing sentence on the four convictions, pursuant to the statutes that would govern an initial sentencing at the time of conviction. For example, the court asked if it would "be sentencing on all four counts" and the prosecutor said that it would "[b]e sentencing, yes." The prosecutor then suggested that "consecutive sentences" would be appropriate on Counts 2 and 4 because defendant's actions demonstrated his "willingness to commit more than one criminal offense" and caused different harms. Defense counsel argued that, because the acts underlying Counts 2, 3, and 4 all "were committed in the * * * same criminal episode," the "sentences" should be "made concurrent to one another for 18 months total." Alternatively, defense counsel argued that the court should exercise its discretion "to run that concurrent" even if the sentences could be made consecutive. Both parties' arguments implicitly were directed to ORS 137.123, the statute

that spells out the circumstances under which trial courts may and may not impose consecutive sentences.[2]

After hearing from the lawyers and from defendant personally, the trial court explained that it was going to revoke defendant's probation because the purposes of probation were not being served. On Count 1, the trial court ordered defendant to serve 60 days in the custody of the Lane County Supervisory Authority. On each of Counts 2, 3, and 4, the court explained that it would "sentence" defendant to the presumptive term of 18 months' imprisonment, with one year of post-prison supervision. The court ordered that the prison term on Count 3 be served concurrently with the prison term on Count 2.

On Count 4, however, the court ordered that the prison term be served consecutively to the prison term imposed on Count 2. The court based its imposition of consecutive terms of incarceration on a finding "that this all did not occur in one continuous course of conduct." Accordingly, the court ordered "that [18-month] sentence" on Count 4 to be served "consecutive to the previous counts," for a "total of 36 months with the Department of Corrections." The court's written revocation judgment reflects its oral rulings.

---

[2] As pertinent here, ORS 137.123 provides:

"(1) * * * The court may provide for consecutive sentences only in accordance with the provisions of this section. * * *

"(2) If a defendant is simultaneously sentenced for criminal offenses that do not arise from the same continuous and uninterrupted course of conduct, * * * the court may impose a sentence concurrent with or consecutive to the other sentence or sentences.

"* * * * *

"(5) The court has discretion to impose consecutive terms of imprisonment for separate convictions arising out of a continuous and uninterrupted course of conduct only if the court finds:

"(a) That the criminal offense for which a consecutive sentence is contemplated was not merely an incidental violation of a separate statutory provision in the course of the commission of a more serious crime but rather was an indication of defendant's willingness to commit more than one criminal offense; or

"(b) The criminal offense for which a consecutive sentence is contemplated caused or created a risk of causing greater or qualitatively different loss, injury or harm to the victim or caused or created a risk of causing loss, injury or harm to a different victim than was caused or threatened by the other offense or offenses committed during a continuous and uninterrupted course of conduct."

In his first assignment of error on appeal, defendant challenges the court's imposition of consecutive sentences on Counts 2 and 4. Citing the court's finding that "this all did not occur in one continuous course of conduct," defendant asserts that the court must have imposed consecutive sentences under ORS 137.123(2), which authorizes such sentences for offenses "that do not arise from the same continuous and uninterrupted course of conduct." According to defendant, the court erred by relying on that statutory provision because "the facts in the record do not support a finding that Count 4 did not occur in one continuous course of conduct as Count 2."[3]

In response, the state does not attempt to defend imposition of the consecutive prison terms under ORS 137.123(2). That is, the state does not argue that the record supports a finding that the convictions on Counts 2 and 4—which both related to the single August 2012 incident at Lithia Motors—did not arise from "the same continuous and uninterrupted course of conduct." The state's reticence is understandable, as the record does not support such a finding. Accordingly, defendant is correct that the trial court's imposition of consecutive sentences cannot stand—at least, not unless one of the state's proffered alternative bases for affirmance, discussed below, has merit.

We turn to two arguments that the state makes in urging us to affirm the judgment on a different ground. First, with respect to sentencing under ORS 137.123, the state contends that we should interpret the trial court's reasoning as being based on subsection (5) of the statute, not on subsection (2). That is, the state argues, the court's

---

[3] Because this case involves a stipulated sentencing agreement approved by the court, we have considered whether we have authority to review defendant's challenge to the judgment revoking his probation. *See* ORS 138.222(2)(d) (providing that a court may not review a sentence imposed for a felony conviction "resulting from a stipulated sentencing agreement between the state and the defendant which the sentencing court approves on the record"). Here, although defendant arguably stipulated that presumptive terms of incarceration would be imposed if his probation was revoked, he did not stipulate that any terms of incarceration imposed as probation-revocation sanctions would run consecutively. Accordingly, we have authority to review the trial court's imposition of those consecutive terms. *See State v. Ivie*, 213 Or App 198, 202, 159 P3d 1257 (2007) (under ORS 138.222(2)(d), "[i]f some aspects of a sentence comport with the stipulation and others do not, the portions that were not part of the stipulation are reviewable").

finding that "this all did not occur in one continuous course of conduct" was actually a colloquial, shorthand way of stating that "the criminal mischief [Count 4] was 'not merely an incidental violation of a separate statutory provision *in the course of* the commission of a more serious crime.'" (Emphasis in state's brief; quoting ORS 137.123(5)(a).) We disagree. In our view, the trial court's finding cannot fairly be read to refer to anything other than ORS 137.123(2); it certainly does not reflect any judicial determination of the relative seriousness of the criminal behavior underlying Counts 2 and 4 or suggest that the court had rejected the idea that one of defendant's acts was "merely an incidental violation of a separate statutory provision."[4]

Second, and alternatively, the state asks us to affirm the judgment on a "right for the wrong reason" basis. Relying on this court's opinion in *State v. Newell*, 238 Or App 385, 242 P3d 709 (2010), the state argues that ORS 137.123 does not apply to this case at all, because that statute "does not control probation revocation sanctions." Instead, the state argues, "OAR 213-012-0040(2) controls whether probation-revocation sanctions may be imposed consecutively."

The state is correct that ORS 137.123 does not control the sanctions that a court may impose after revoking a defendant's probation on a felony conviction. As we explained in *Newell*, both statutes and case law distinguish "between sentencing (or resentencing) and proceedings held concerning probation violations, and the sanctions that may be imposed as a result," at least for convictions for felonies committed on or after November 1, 1989. *Newell*, 238 Or App at 393. In particular, ORS 137.545(5)(b) provides that, after revoking the probation of a defendant sentenced for such a felony, the trial court may "impose a sanction as provided by rules of the Oregon Criminal Justice Commission." When a court revokes probation on a felony conviction and decides how the defendant should be punished for the probation violation, the court is not imposing sentence on the original conviction. Rather, it is sanctioning the defendant for having violated

---

[4] In all events, as we explain below, the court lacked authority to impose sentence on defendant under ORS 137.123 or otherwise. Instead, the court should have determined what sanctions were appropriate to punish defendant for violating the conditions of his probation.

the conditions of his or her probation. *State v. Lane*, 260 Or App 549, 555, 318 P3d 750, *rev allowed*, 355 Or 317 (2014). Accordingly, ORS 137.123, which governs the imposition of consecutive *sentences*, does not apply in felony probation-revocation proceedings. *Newell*, 238 Or App at 393-95.

Instead, when a trial court revokes a probationary sentence on a felony conviction, its decision about what revocation sanctions to impose is governed by rules of the Criminal Justice Commission, which also distinguish between consecutive sentences and consecutive incarceration sanctions. *Id.* at 393-94. As pertinent here, OAR 213-012-0040(2) specifies the circumstances under which a trial court may choose to impose consecutive incarceration sanctions:

> "When an offender is serving multiple terms of probationary supervision, the sentencing judge may impose revocation sanctions for supervision violations as provided by OAR 213-010-0002 for the violation of each separate term of probationary supervision.
>
> "(a)  If more than one term of probationary supervision is revoked for a single supervision violation, the sentencing judge shall impose the incarceration sanctions concurrently.
>
> "(b)  If more than one term of probationary supervision is revoked for separate supervision violations, the sentencing judge may impose the incarceration sanctions concurrently or consecutively."

That rule references OAR 213-010-0002, which provides, in pertinent part, that, for defendants whose probationary sentence was a departure from a presumptive prison term, the revocation sanction "shall be a prison term up to the maximum presumptive prison term which could have been imposed initially, if the presumptive prison term exceeds 12 months." OAR 213-010-0002(2). The rule additionally provides that, when a court imposes a revocation sanction, it "shall also set a term of post-prison supervision * * *." *Id.*

Referencing OAR 213-012-0040(2), the state argues that we should affirm the trial court's imposition of consecutive "sentences" in this case because the trial court could have imposed consecutive probation-revocation sanctions,

and could have done so without making the kind of findings about the circumstances of the crimes that are pertinent to the imposition of consecutive sentences under ORS 137.123. That is, the state contends that, because "defendant admitted to two probation violations—failure to pay fees and fines and possession of a weapon * * * the trial court was permitted to impose two consecutive probation-revocation sanctions" and, essentially, "did so."

We decline to affirm on that "right for the wrong reason" basis. First, the judgment revoking probation incorrectly states that defendant now has been given "sentence[s]" that include prison terms on Counts 2, 3, and 4. The trial court lacked authority to impose sentence on defendant after it revoked his probation, and the judgment is incorrect—it is not "right"—insofar as it reflects that unauthorized action.

Second, and more fundamentally, we reject the state's argument because—even assuming that the trial court had authority to order defendant to serve consecutive 18-month terms of incarceration as probation sanctions under OAR 213-012-0040—it is not clear that the trial court would have done so if it had understood that it was only imposing probation-revocation sanctions, and not imposing sentence. The two actions implicate different concerns. Sentences punish criminal activity that has resulted in convictions. *See State v. Hart*, 299 Or 128, 138, 699 P2d 1113 (1985) ("traditional goals of sentencing" include such matters as "rehabilitation of the defendant and deterrence to impress upon the defendant the seriousness and cost of his offense"); *cf.* Or Const, Art I, § 15 ("Laws for the punishment of crime shall be founded on these principles: protection of society, personal responsibility, accountability for one's actions and reformation."). The imposition of sanctions after revocation of probation on a felony conviction has a different purpose: "to punish the conduct constituting the probation violation, *not* to punish the crimes of conviction." *Lane*, 260 Or App at 554 (emphasis added).

In this case, the court purported to impose *sentences* after defendant violated his probation conditions, and it did so after hearing the prosecutor again describe the circumstances of defendant's original crimes—not just the ways in

which defendant had violated his probation. Had the court and the parties understood that the court could not then sentence defendant for the criminal activity underlying his convictions, but could only punish his probation violations pursuant to OAR 213-010-0002 and OAR 213-012-0040(2), the record might have developed differently. For example, the parties might have provided the court with more details about defendant's probation violations. Moreover, a differently developed record might have materially influenced the trial court's ultimate decision. That is, it is reasonable to infer that, had the trial court properly considered only what sanctions would appropriately punish defendant for "the conduct constituting the probation violation," *Lane*, 260 Or App at 554, and not what it belatedly might view as appropriate punishment for defendant's original crimes, the court might not have imposed the same consecutive 18-month terms of incarceration. Accordingly, we cannot affirm on a "right for the wrong reason" basis. *See Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001) (describing circumstances under which appellate courts may apply the "right for the wrong reason" doctrine).[5]

Reversed and remanded.

---

[5] We reject the argument in defendant's second assignment of error without published discussion.