**STATE of Iowa, Appellee,**

v.

**James L. MAYBERRY, Appellant.**

**No. 86–1301.**

Supreme Court of Iowa.

Nov. 25, 1987.

Charles L. Harrington, Appellate Defender, and James R. Huff, Asst. Appellate Defender, for appellant.

Thomas J. Miller, Atty. Gen., Pamela Greenman Dahl, Asst. Atty. Gen., and J. Patrick White, Co. Atty., for appellee.

LARSON, Justice.

James L. Mayberry was convicted of first-degree murder and sentenced to life in prison. His conviction was affirmed in *State v. Mayberry,* 411 N.W.2d 677 (Iowa 1987). In a separate restitution proceeding under Iowa Code section 910.2 (1985), the court ordered Mayberry to pay $60,828.53 to the parents of the victim, representing the present value of her projected estate plus funeral expenses. Mayberry appealed, claiming (1) there was no reasonable basis for the court's assessment of damages, (2) the restitution order constituted an excessive fine in violation of the eighth amendment to the United States Constitution, and (3) denial of a jury trial on restitution violated the sixth amendment to the United States Constitution and article I, section 9 of the Iowa Constitution. We affirm.

Iowa Code section 910.2 provides, in relevant part, that

> [i]n all criminal cases except simple misdemeanors under chapter 321, ... the sentencing court shall order that restitution be made by each offender to the victims of the offender's criminal activities and, to the extent that the offender is reasonably able to do so, to the county where conviction was rendered for court costs, court-appointed attorney's fees or the expense of a public defender when applicable.

Iowa Code section 910.3 provides that

> [t]he court shall require the county attorney to promptly prepare a statement of *pecuniary damages* to victims of the defendant and shall require the clerk of court to prepare a statement of court-appointed attorney's fees, the expense of a public defender and court costs which shall be promptly provided to the presentence investigator.

(Emphasis added.)

I. Mayberry first argues that the court's determination of pecuniary damages was arbitrary and conjectural and that the evidence did not provide a sufficient basis for their award. "Pecuniary damages," for restitution purposes, are defined by Iowa Code section 910.1(2):

*"Pecuniary damages"* means all damages to the extent not paid by an insurer, which a victim could recover against the offender in a civil action arising out of the same facts or event, except punitive damages and damages for pain, suffering, mental anguish, and loss of consortium. Without limitation, "pecuniary damages" includes damages for wrongful death.

■ In a case where the victim has died, section 910.1(2) thus adopts, with certain exceptions not applicable here, the civil measure of damages for wrongful death. That measure is the present worth or value of the estate which the decedent would reasonably be expected to have saved and accumulated as the result of her efforts between the time of her death and the end of her natural life had she lived. *See Iowa–Des Moines Nat'l Bank v. Schwerman Trucking Co.,* 288 N.W.2d 198, 201 (Iowa 1980).

Relevant factors in this determination are the "decedent's age and life expectancy, characteristics and habits, health, education or opportunity for education, general ability, other occupational qualifications, industriousness, intelligence, manner of living, sobriety or intemperance, frugality or lavishness, and other personal characteristics that are of assistance in securing business or earning money." *Id.* (citing *Ehlinger v. State,* 237 N.W.2d 784, 792 (Iowa 1976); *Schmitt v. Jenkins Truck Lines, Inc,* 170 N.W.2d 632, 655 (Iowa 1969)).

■ The murder victim in this case, Julia Wise, was twenty-one years old at the time of her death and had just moved to Iowa City to pursue an education in foreign languages. According to the testimony of her father, Julia had intended to seek employment in international relations and business. Described as bright, determined, tenacious, and physically fit, Julia had earned a grade point average of 3.5 in her previous semester of college.

A "career information specialist" testified to the average salaries earned by college graduates in humanities, Julia's expected major. Another witness, an insur-

ance agent, testified as to the projected value of Julia's estate. Using the type of analysis commonly used by him in advising insurance clients as to their insurance needs, this witness prepared a range of figures on the value of Julia's estate. This range was based on variables in her projected income and expected work life. The high figure was $211,956 and the low $58,295. The court set the value of her estate at the lower amount.

This court has observed that:

> This rule [for wrongful death recovery] is vague, uncertain and speculative, if not conjectural, but it is the best which judicial wisdom and experience have been able to formulate. No evidence is possible of the time which deceased would have lived but for the injury complained of. Had he avoided this injury, death may have met him the next day, week or year in some other form. In business he might have become a phenomenal success and accumulated millions, or he might have lived to old age and died a pauper. From a man of good habits, prudence and industry, he might have become a spendthrift or a tramp, or if a man of dissolute habits he might have reformed into an efficient and prosperous citizen. But the demands of justice will not tolerate the taking of human life by the tort of another without the wrongdoer answering therefor in damages, and the rule we have stated is the one which has been devised for this purpose. The difficulty in its practical application lies in the fact it calls for an estimate which must be arrived at by a balancing of mere probabilities which the jury must infer from the age, character, habits, condition, education, employment, surroundings and apparent capacity of the deceased.

*Brophy v. Iowa–Illinois Gas & Elec. Co.,* 254 Iowa 895, 897–98, 119 N.W.2d 865, 866 (1963).

The district court's order for restitution, we believe, is supported by substantial evidence, and we affirm.[1]

■ II. Mayberry also claims the restitution order is an excessive fine, prohibited by the eighth amendment to the United States Constitution. While there is some question whether this claim was adequately raised in district court, we nevertheless consider it and reject it on its merits. Mayberry complains that, at the current percentage of his prison salary allocated to payment of restitution, it would take him 1062 years to pay it off and that "[s]uch a judgment makes a mockery of the restitution process."

Whether an order for restitution is a fine, a civil claim, or a hybrid is not entirely clear. In *Kelly v. Robinson,* —— U.S. ——, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986), the Supreme Court addressed the question of whether a restitution order was a dischargeable civil debt for bankruptcy purposes. It held that an order for restitution, imposed as a condition of probation in that case, was a part of the judgment of conviction. Therefore, it was not a civil debt and not dischargeable in bankruptcy. *Id.* at —— – ——, 107 S.Ct. at 358–62, 93 L.Ed.2d at 226–30.

While *Kelly* did not concern an eighth amendment claim, it provides some authority for Mayberry's argument that a restitution order should be considered as a fine for eighth amendment purposes. This view is reinforced by the Supreme Court's comparison of a traditional fine, on the one hand, and a restitution order on the other. Restitution

> forces the defendant to confront, in concrete terms, the harm his actions have caused. Such a penalty will affect the defendant differently than a traditional fine, paid to the State as an abstract and impersonal entity, and often calculated without regard to the harm the defendant has caused. Similarly, the direct relation between the harm and the punish-

---

**1.** Under Iowa Code section 910.5(1), the Director of the Division of Adult Corrections determines the method of payment. Under that provision, Mayberry has been ordered to pay 20% of his prison earnings. He does not challenge this percentage.

ment gives restitution a more precise deterrent effect than a traditional fine. *Kelly,* —— U.S. at —— n. 10, 107 S.Ct. at 360, n. 10, 93 L.Ed.2d at 228 n. 10 (citing Note, *Victim Restitution in the Criminal Process: A Procedural Analysis,* 97 Harv. L.Rev. 931, 937–41 (1984)).

It has been noted that restitution, in fact, evolved into fines when amounts previously paid to crime victims as restitution became payable to the king instead. *See State v. Hart,* 299 Or. 128, 131–32, 699 P.2d 1113, 1115 (1985) (citing Wolfgang, *Victim Compensation in Crimes of Personal Violence,* 50 Minn.L.Rev. 223, 228 (1965)).

For purposes of deciding this case, we will assume a restitution order may be so excessive as to run afoul of the eighth amendment. Even so, the order is not "excessive" if it bears a reasonable relationship to the damage caused. *See Hart,* 299 Or. at 140–41, 699 P.2d at 1120–21. Under the evidence here, an award of $58,295 plus funeral expenses for the death of a twenty-one-year-old victim with her potential is clearly not excessive.

Furthermore, under Iowa Code section 910.7, a plan of restitution is reviewable at any time during the period of probation, parole, or incarceration at the request of the offender or the party who prepared the plan of restitution.

For these reasons, we reject Mayberry's eighth amendment argument.

 III. Iowa Code section 910.3 authorizes the court, acting without a jury, to determine the amount of restitution. Mayberry complains that this violates his constitutional right to a jury trial under the sixth amendment to the United States Constitution and article I, section 9 of the Iowa Constitution.[2]

While a criminal defendant is entitled to a jury trial on the elements of the crime charged, there is no such right to a jury trial at the time of sentencing. *See United States v. Brown,* 744 F.2d 905, 908 (2d

Cir.1984); *Hart,* 299 Or. at 136–37, 699 P.2d at 1118.

We find no basis for reversal.

AFFIRMED.

All Justices concur except SNELL and ANDREASEN, JJ., who take no part.

---

2. Mayberry originally raised a seventh amendment challenge in district court, arguing that he was denied his constitutional right to a trial by jury in a civil action. This argument has not been pursued on appeal, and, in fact, seems to

be contrary to the weight of authority. *See, e.g., United States v. Florence,* 741 F.2d 1066, 1067 (8th Cir.1984); *State v. Haines,* 360 N.W.2d 791, 795 (Iowa 1985).