**STATE of Iowa, Appellee,**

v.

**Everett Ray WAGNER, Appellant.**

**No. 91–235.**

Court of Appeals of Iowa.

Feb. 25, 1992.

Douglas H. Napier of Napier, Wright & Wolf, Fort Madison, for appellant.

Bonnie J. Campbell, Atty. Gen., Ann E. Brenden, Asst. Atty. Gen., Michael P. Short, County Attorney; and Robert Glaser, Asst. Atty. Gen., for appellee.

Heard by DONIELSON, P.J., and HAYDEN and HABHAB, JJ.

HABHAB, Justice.

On September 2, 1981, a major riot and uprising occurred at the Iowa State Penitentiary in Fort Madison. Inmates seized prison employees as hostages and did a great deal of property damage.

Inmate Everett Wagner was identified as one of the leaders in the forced detention of prison employees. After the riot had been quelled, Wagner was charged with seven counts of kidnapping in the second degree and one count of insurrection. In January 1985, following a jury trial, Wagner was convicted of those charges. At the time of sentencing, the trial court directed the Director of Adult Corrections to prepare a restitution plan.

After Wagner was sentenced, the Director of Adult Corrections prepared a restitution plan ordering Wagner to pay victim restitution of $1,300,000.00 to the State. This figure represents the entire amount of damage caused to prison property during the riot. The restitution order also directed Wagner to pay attorney's fees of $42,200.00, expert witness fees of $4,300.00, and court costs of $1,941.06. The trial court approved this restitution plan without holding a hearing.

Wagner appealed from his convictions and sentences. In 1987 the Iowa Supreme Court affirmed the convictions and sentences but remanded for a restitution hearing. *State v. Wagner*, 410 N.W.2d 207, 215–16 (Iowa 1987). The supreme court held Wagner was entitled to an opportunity to contest the restitution plan. On remand, the trial court directed Wagner to pay $1,000,000.00 in victim restitution, $5,000.00 in attorney's fees, $37,706.58 in trial and appellate court costs, and $4,300.00 in witness fees.

Wagner has now appealed from the restitution order entered upon remand. He contends the trial court abused its discretion by directing him to pay restitution equal to the entire amount of prison property damage caused by all the participants in the riot. He argues there was no evidence Wagner's activity was *the* (presumably as opposed to "a") proximate cause of the entire amount of damage.

Wagner also contends the trial court erred by not making a finding about damages paid by an insurer. He claims the restitution statute allows an offset in the restitution by that amount.

Additionally, Wagner claims the trial court erred by ordering him to pay more restitution than the State originally sought. The trial court directed Wagner to pay victim restitution of $1,000,000.00. It did so even though the State during pretrial conference stated it would request restitution of only $109,000.00.

Finally, Wagner contends the district court abused its discretion by ordering restitution for court costs, witness' fees, and attorney's fees. Under Iowa Code section 910.2, restitution for those items is authorized "to the extent that the offender is reasonably able to do so." He argues due to his limited prison income and his extremely high victim restitution obligation, he is not reasonably able to pay restitution for any of the remaining items.

We review for an abuse of discretion. In order to show an abuse of discretion, one generally must show that the court exercised its discretion "on grounds or for reasons clearly untenable or to an extent

clearly unreasonable." *State v. Blackwell,* 238 N.W.2d 131, 138 (Iowa 1976).

## I. *Definitions.*

To facilitate our review, we set out the pertinent portions of definitions from the chapter dealing with victim restitution, Iowa Code chapter 910.

910.1. Definitions.

As used in this chapter, unless the context otherwise requires:

1. *"Victim"* means a person who has suffered pecuniary damages as a result of the offender's criminal activities. However, for purposes of this chapter, an insurer is not a victim and does not have a right of subrogation....

2. *"Pecuniary damages"* means all damages to the extent not paid by an insurer, which a victim could recover against the offender in a civil action arising out of the same facts or event, ...

\*    \*    \*    \*    \*    \*

4. *"Restitution"* means payment of pecuniary damages to a victim in an amount and in the manner provided by the offender's plan of restitution. Restitution also includes the payment of crime victim assistance reimbursements, court costs, court-appointed attorney's fees or the expense of a public defender, and the performance of public service by an offender in an amount set by the court when the offender cannot reasonably pay all or part of the court costs, court-appointed attorney's fees or the expense of a public defender.

## II. *Restitution.*

Before beginning our analysis, we first explore the rationale for restitution. Restitution in Iowa is a creature of statute. It serves two purposes.

The first is to "protect the public by compensating victims of criminal activities." *State v. Kluesner,* 389 N.W.2d 370, 372 (Iowa 1986). The rationale here is similar to that in tort. *See State v. Mayberry,* 415 N.W.2d 644, 645–46 (Iowa 1987). A wrong has been done. A person has been injured or property damaged. The victim deserves to be compensated for injury.

The person liable for the injury, as in tort, is the actor who caused it. The victim is entitled to full compensation for the injury. *Id.*

The second purpose is rehabilitation. *Kluesner,* 389 N.W.2d at 372–73. The defendant has done wrong. A person has been injured. The defendant, in order to take full responsibility for his or her action, must compensate the victim for the damage caused by his or her crime. *Id.*

Restitution is different from other penal sanctions which may be accorded a defendant. In restitution, the criminal actor is forced to confront the effects of his or her wrongdoing. *See Mayberry,* 415 N.W.2d at 646–47. The restitution amount accords with the extent of damage caused by the crime. In other penal sanctions, the criminal generally deals only with the State. *Id.* He or she may spend time in a penal institution, be engaged in community service unrelated to the victim, or may have a fine or other levy imposed. *Id.* However, only in restitution is the criminal actor made to answer directly for the consequences of his or her action. *See id., Kluesner,* 389 N.W.2d at 72–73.

Iowa Code section 910.2 mandates trial courts in sentencing to order restitution. Further, the offender is also liable to pay the crime victim's assistance program, court costs, and any court-appointed attorney fees to the extent he or she is reasonably able to do so. Iowa Code § 910.2 (1991).

This section requires a sentencing court to order victim restitution in full. *See State v. Haines,* 360 N.W.2d 791, 797 (Iowa 1985) ("[t]he literal language of section 910.2 requires the court to first order restitution to the victim in full."); *State v. Harrison,* 351 N.W.2d 526, 528 (Iowa 1984) ("[t]his section thus unconditionally requires the sentencing court to order offenders to make restitution to their victims, and it makes full payment to the victim a condition precedent to payment to the county for court costs and attorney fees.").

The restitution ordered to the victim is made without regard to the defen-

dant's ability to pay. The victim is entitled to full restitution to the extent of the damage caused by the crime. As restitution is part of the criminal penalty, it is not dischargeable in bankruptcy. *Mayberry*, 415 N.W.2d at 646. Problems with excessive fines and penalties under the eighth amendment of the United States Constitution are avoided by only requiring a portion of the offender's total income be paid towards the restitutionary order. *See id.* at 646–47; *State v. Van Hoff*, 415 N.W.2d 647, 649 (Iowa 1987). The sentencing court must ascertain the defendant retains enough income to subsist on.

The restitution order must rest on "a causal connection between the established criminal act and the injury to the victim." *State v. Holmberg*, 449 N.W.2d 376, 377 (Iowa 1989). This causal connection is essentially the tort element of proximate cause. *Id.; State v. Starkey*, 437 N.W.2d 573, 574 (1989). This connection must be shown under "some civil theory such as fraud or intentional tort." The damage must have been caused by the offender's criminal act to justify the restitution order. *Holmberg*, 449 N.W.2d at 377–78.

Once the causal connection is established by a preponderance of the evidence, "the statute allows recovery of 'all damages' . . . which the state can show by a preponderance of the evidence." *Id.* at 377. A restitutionary order is not excessive "if it bears a real reasonable relationship to the damage caused." *Mayberry*, 415 N.W.2d at 647. The relationship between damage caused by the criminal act and the restitutionary order must be shown by a preponderance of the evidence.

The defendant may seek, on appeal, to have the trial court's restitution order overturned or modified. However, the defendant must show "a failure of the trial court to exercise discretion or abuse of discretion." *State v. Kaelin*, 362 N.W.2d 526, 528 (Iowa 1985). This standard is similar to that required to overturn any other sentencing order of the trial court. The court is required to exercise discretion only as to the defendant's reasonable ability to pay court costs and attorney fees or to impose community service in lieu of monetary payments. *Id.*

## III. *Comparative Fault.*

Wagner complains the trial court erred by refusing to apply a comparative fault standard. Iowa's comparative fault statute provides:

> As used in this chapter, "fault" means one or more acts or omissions that are in any measure negligent or reckless toward the person or property of the actor or others, or that subject a person to strict tort liability. The term also includes breach of warranty, unreasonable assumption of risk not constituting an enforceable express consent, misuse of a product for which the defendant otherwise would be liable, and unreasonable failure to avoid an injury or to mitigate damages.

Iowa Code § 668.1(1).

Tort theories dealing with fraud and intentional torts are not included in the definition of "fault" to which chapter 668 applies. Consequently, the Iowa Supreme Court has held the chapter 668 comparative fault principles do not apply in fraud cases. *Tratchel v. Essex Group, Inc.*, 452 N.W.2d 171, 180–81 (Iowa 1990). *Tratchel*'s reasoning applies to intentional torts as well. *See id.* Wagner's taking hostages was an intentional tort.

We determine comparative fault principles do not apply to restitution for criminal acts under Iowa Code chapter 910. Wagner may properly be held liable for the full amount of pecuniary damages. We affirm the trial court on this issue.

Wagner further argues his restitution should have been decided by the jury. The Iowa Supreme Court has ruled on this issue. *Mayberry*, 415 N.W.2d at 647. In *Mayberry*, the supreme court held restitution was part of sentencing. Thus, it is a function of the trial judge and not the jury. *Id.* We affirm on this issue.

## IV. *Offset for Insurance.*

Wagner claims the trial court erred in its order for restitution by failing to allow an offset for amounts paid the victim by insurance. Section 910.1(2) defines "pecuniary damages" as "all damages to the extent not paid by an insurer." Thus, it is clear the statute provides an offset for the amount of damages to the victim covered by insurance payments.

Section 910.3 provides in pertinent part:

**910.3 Determination of amount of restitution.**

The court shall require the county attorney to promptly prepare a statement of pecuniary damages to victims of the defendant and shall require the clerk of court to prepare a statement of court-appointed attorney's fees, the expense of a public defender and court costs which shall be promptly provided to the presentence investigator. These statements shall become a part of the presentence report. If a defendant believes no person suffered pecuniary damages, the defendant shall so state. If the defendant has any mental or physical impairment which would limit or prohibit the performance of a public service, the defendant shall so state....

Our reading of the statute persuades us the State should determine insurance paid to victim. As restitution under this statute only occurs in a criminal case, often the county attorney will be the only party who can gather this information without unduly intruding upon the victim. The criminal, on the other hand, will most likely have little or no contact with the victim. A perpetrator's continuing intrusion in the victim's financial affairs may only aggravate the trauma of the crime. This clearly runs counter to the legislative intent. We determine it is the State's responsibility to ascertain the proper amount of pecuniary damages, including the offset for insurance.

However, our inquiry does not end here. If the county attorney fails to include the insurance offset, the defendant must object to that failure.

[T]he rule is well established that a party may not sit by and permit the trial court to commit inadvertent error without protest, and then complain for the first time to this court on appeal.

*State v. Lyon,* 223 N.W.2d 193, 194 (Iowa 1974); *Miller v. Bonar,* 337 N.W.2d 523, 530 (Iowa 1983); *see cf. State v. Jeffries,* 430 N.W.2d 728, 737 (Iowa 1988) ("to preserve error, a defendant must request a lesser-included offense instruction or object to the court's failure to give it").

We are unable to find any mention of insurance in the record. Nor has Wagner indicated where his objection was preserved. *See* Iowa R.App.P. 14(a)(5). We determine Wagner has failed to preserve error on his entitlement to an offset for insurance. We affirm on this issue.

## V. *Original Restitution Sought.*

Pursuant to a pretrial conference, the trial court entered an order indicating the State was seeking $109,000.00 in restitution. At trial, the State agreed to be bound by that figure. After hearing the evidence, the trial court ordered $1,000,000.00 restitution. On appeal, Wagner contends the trial court abused its discretion by awarding higher restitution than the $109,000.00 originally sought by the State.[1]

Restitution is a phase of sentencing. *See Mayberry,* 415 N.W.2d at 647. The trial court generally is not bound, unless it agrees, to the State's recommendation on sentencing. *See State v. Wenzel,* 306 N.W.2d 769, 771 (Iowa 1981); Iowa R.Crim.P. 9.

However, the facts of this case present us with a different situation. The trial court here held a pretrial conference. Part of the agenda of that conference was to

---

1. This issue is largely academic. Wagner presently makes about $7.20 per month. He has been ordered to pay twenty-five percent of his income towards his restitution. That presently amounts to $21.60 per year. At this rate, it will take Wagner about 5,046 years to pay off $109,- 000.00. It would otherwise take him about 46,- 000 years to pay off the $1,000,000.00 restitution order. As he received cumulatively about forty years on his kidnapping and related charges, Wagner will never make any real inroad into this restitution amount.

ascertain the precise amount of restitution sought by the State. We set out the pertinent pretrial order:

On September 14, 1990, an Order was entered herein continuing the pre-trial conference to October 5, 1990, at 11:15 a.m. *at which time the Attorney General was to define the issue as to the precise amount of restitution the State of Iowa was claiming from the defendant, Everett R. Wagner.* (Emphasis added.)

Said pre-trial conference resumed on said date and hour, the State of Iowa appearing by Iowa Assistant Attorney General Mr. Robert Glaser, and the defendant appearing by his attorney Mr. Jerald Gregg.

The Court was advised that the State of Iowa will be seeking restitution from Wagner in the amount of $109,000 representing physical damages to the Iowa State Penitentiary. The State indicated it would also seek attorney fees and court costs.

It was agreed that this case will take approximately one and a half days of court time to try and the Court indicated to counsel that a copy of this order would be forwarded to the court administrator's office, and that the court administrator would give this matter a trial assignment after first conferring with counsel.

After reviewing the facts, this situation appears to us to be most analogous to the circumstances outlined by the Iowa Supreme Court in *White v. Citizens National Bank of Boone*, 262 N.W.2d 812 (Iowa 1978). In that case the defendant posed an interrogatory to the plaintiff asking her to specify the amount of her damages. *Id.* at 815. The plaintiff answered her damages were $4,900.00. *Id.* At trial the plaintiff attempted to prove she sustained $25,-000.00 damages. *Id.* The trial court excluded evidence proving damage exceeding the amount set out in her answers to interrogatories. *Id.* at 816. The supreme court affirmed. It cited to Iowa Rule of Civil Procedure 125, which imposed a continuing duty on a party to update the answers if they are no longer true. *Id.* at 815. The supreme court stated:

The purpose of the rule is to avoid surprise and to permit the issues to become both defined and refined before trial. This allows litigants to prepare for the actual matters they will ultimately confront. Faced with a claim for $25,-000, defendant quite reasonably might have engaged in more investigation, might have themselves hired experts, and might have prepared to meet plaintiff's evidence with additional rebutting testimony of their own. They were effectively denied this opportunity by plaintiff's failure to supplement her answers.

*Id.* at 816.

■ The rationale of *Citizens National Bank of Boone* is equally applicable here. Both the defendant and the court were apprised the "precise amount" of restitution sought by the State was $109,000.00. This is the amount Wagner was to defend against. The State's attorney agreed at the hearing to be bound by the State's previous stipulation. We determine the trial court abused its discretion by imposing a higher amount of restitution than the State had stipulated to in the pretrial conference order.

We reverse on this issue. The State stated and the trial court entered the amount of $109,000.00 as the amount being sought for restitution. We remand this case to the trial court for entry of an order of restitution of $109,000.00 in conformity with the trial court's pretrial order. There is substantial evidence in the record supporting an entry in that amount.

### VI. *Reasonableness of Costs Restitution.*

Finally, Wagner challenges the trial court's restitution order on court costs and attorney fees. He alleges the trial court failed to make the necessary reasonableness finding. We disagree.

The pertinent code section provides:

**910.2 Restitution or community service to be ordered by sentencing court.**

In all criminal cases except simple misdemeanors under chapter 321, in which there is a plea of guilty, or special verdict upon which a judgment of conviction

is rendered, the sentencing court shall order that restitution be made by each offender to the victims of the offender's criminal activities and, if the court so orders and *to the extent that the offender is reasonably able to do so,* for crime victim assistance reimbursement, court costs, court-appointed attorney's fees or the expense of a public defender when applicable. However, *victims shall be paid in full before restitution is paid for crime victim assistance reimbursement, court costs, court-appointed attorney's fees or for the expense of a public defender.* In structuring a plan of restitution, the court shall provide for payments in the following order of priority: victim, crime victim assistance reimbursement, court costs, and court-appointed attorney's fees or the expense of a public defender. (Emphasis added.)

This section provides court costs and attorney fees are ordered only "to the extent that the offender is reasonably able" to pay. A defendant's reasonable ability to pay is a constitutional prerequisite for a criminal restitution order such as is provided by Iowa Code chapter 910. *Van Hoff,* 415 N.W.2d at 648–49.

Our supreme court has drawn a distinction between "reasonable" ability to pay a current installment and ability to ultimately pay the total amount due. In the *Van Hoff* case, it stated:

We do not believe Van Hoff's "reasonable" ability to pay the restitution is necessarily determined by his ability to pay it in full during the period of his incarceration, as held by the court of appeals, although that might be one of the factors to be considered. *A determination of reasonableness, especially in a case of long-term incarceration, is more appropriately based on the inmate's ability to pay the current installments than his ability to ultimately pay the total amount due.* Van Hoff does not claim that he is paying child support, alimony, or any similar expenses. His living expenses, obviously, are paid by the state. He does not claim that he is unable to

pay 20% of his prison wages toward the restitution order. (Emphasis added.)

If circumstances change, either an offender or the officer preparing the plan of restitution may apply to reduce or increase the payments. Iowa Code § 910.7.

*Id.* at 649.

Thus, the focus on this issue should be whether the defendant has the ability to pay the current installment, not whether he can pay the entire restitutionary amounts. It is clear the defendant's earnings at this time can be best characterized as meager. It is likely that his wages will increase, and there is always the possibility that he may come into money from some other source. The defendant does not claim that he is unable to pay the portion now allotted from his resources. Should his circumstances change either way, the defendant or the authorities may apply to have the plan of restitution changed. Although the total restitutionary amounts are high, the monthly installments are not excessive and fall well within constitutional safeguards. We do not find an abuse of discretion on the part of the trial judge.

As it relates to the discretionary powers of the court, the Iowa Supreme Court in *State v. Harrison,* 351 N.W.2d 526 (Iowa 1984), provides guidance. In *Harrison,* the supreme court vacated the restitution order and remanded for reconsideration. In that case the trial court failed to exercise its discretion by not considering what the defendant could reasonably pay towards his court costs and attorney's fees. *Id.* at 528–30.

Here, the trial court did consider what the defendant could reasonably pay. In exercising its discretion, the court applied a reasonable standard as case law requires. *Id.* In this respect, we note Wagner earns about $7.20 per month. He was ordered to pay 25% of his monthly earnings toward restitution.

At his present rate of pay, Wagner will pay off the $109,000.00 restitution order in about 5,046 years. This amount must be paid first. *See* Iowa Code § 910.2. He

received a substantial sentence for his convictions of second-degree kidnapping and one conviction of insurrection. Wagner will most likely be incarcerated for some time to come. Realistically, in all likelihood, this restitution will never be paid. This, however, does not excuse him from making constitutionally-permissible monthly payments on his debt.

We conclude that the trial court's refusal to further reduce the restitution amount is not an abuse of discretion. We affirm.

### VII. *Conclusion.*

We affirm the right of the trial court to enter restitution orders. The decision was properly made by the trial judge, not the jury.

We reverse and vacate the trial court's restitution order of $1,000,000.00. We remand to the trial court to enter a restitution order in the amount set out in the pretrial order, $109,000.00.

We affirm the trial court's restitution order on court costs, witness fees, and attorney fees. We affirm the trial court on all other issues.

AFFIRMED IN PART, REVERSED AND VACATED IN PART, AND REMANDED.