Scott R. MABRIER, Appellant,

v.

STATE of Iowa, Appellee.

No. 93–580.

Supreme Court of Iowa.

July 27, 1994.

Philip B. Mears and Angela Baker of Mears Law Office, Iowa City, for appellant.

Bonnie J. Campbell, Atty. Gen., and R. Andrew Humphrey, Asst. Atty. Gen., for appellee.

Considered by HARRIS, P.J., and LARSON, LAVORATO, SNELL, and TERNUS, JJ.

TERNUS, Justice.

Scott R. Mabrier appeals from the district court's order denying his application for post-conviction relief from a prison disciplinary action. Mabrier argues that the prison disciplinary committee (1) lacked authority to discipline him for conduct that took place outside the institution and while he was not in the physical custody of the state; (2) could not constitutionally discipline him for this conduct without prior notice that the disciplinary rules encompassed conduct occurring after an inmate had escaped; and (3) lacked authority to assess as costs damages that Mabrier caused while escaped and the over-

time wages of the guards who pursued him. We reverse.

## I. *Background Facts and Proceedings.*

Shortly after midnight on December 27, 1991, Mabrier and fellow inmate Ralph Meyer escaped from the Luster Heights Correctional Facility at Harpers Ferry, Iowa. They left the facility on foot and eventually came upon a sawmill operated by the Department of Natural Resources (DNR). Mabrier and Meyer broke a plexiglass window in the sawmill, entered the building and stole some petty change from a desk drawer. The two escapees also stole a DNR truck.

Later that morning a deputy sheriff spotted Mabrier and Meyer in the DNR truck. Meyer was driving and attempted to outrun the deputy. Mabrier jumped out of the truck and ran into a cornfield. He was captured a short time later. The authorities apprehended Meyer the following morning.

The prison disciplinary committee disciplined Mabrier for violating several of the prison's disciplinary rules. The committee imposed various sanctions, including disciplinary detention and loss of good time. It also ordered Mabrier to pay one-half the costs of towing the truck and replacing the plexiglass window, in addition to one-half of the overtime wages of the guards who pursued him and Meyer.

The warden of the Iowa Men's Reformatory denied Mabrier's appeal, as did the Deputy Director for Institutions. The district court subsequently rejected Mabrier's application for postconviction relief. Mabrier appeals.

## II. *Scope of Review.*

A postconviction proceeding is a civil action and is triable at law. *Jones v. State*, 479 N.W.2d 265, 269 (Iowa 1991). Our review of a postconviction proceeding is at law. *Wenman v. State*, 327 N.W.2d 216, 217 (Iowa 1982).

## III. *Imposition of Discipline for Conduct After Escape.*

The disciplinary committee found Mabrier had violated nine disciplinary rules. Only two of these rule violations involved conduct occurring at the correctional facility, escape and unauthorized absence. Mabrier does not challenge his discipline for these rule violations.

The remaining seven rule violations were based on Mabrier's actions in breaking into the sawmill, stealing the petty cash and truck, and attempting to elude the deputy sheriff. Mabrier challenges the imposition of discipline for this conduct because it occurred after he had successfully escaped from the confines of the institution. He argues that the disciplinary committee had no authority to discipline him for conduct that took place outside the institution and when he was not in the physical custody of the Department of Corrections (DOC).

In determining whether the prison disciplinary committee had authority to punish Mabrier for his actions while on escape status, we need look no further than the DOC's own policies and rules. The DOC's disciplinary policy states that its purpose is "to maintain discipline *within the correctional institution.*" (Emphasis added.) The policy provides that sanctions are to be imposed only as necessary "to promote a safe and orderly *institutional* environment." (Emphasis added.) Finally, the DOC disciplinary policy also says that the disciplinary rules "are applicable to inmates only while under the *physical custody* of the Iowa Department of Corrections." (Emphasis added.)

We believe that these policy statements by the DOC evidence its intent that the disciplinary rules apply only to inmates in an institution or otherwise in the physical custody of the DOC. Consequently, the rules do not apply to an inmate while on escape status. *Alexander v. Oregon State Penitentiary*, 99 Or.App. 659, 783 P.2d 1034, 1036 (1989) (disciplinary rules did not encompass conduct of inmate that occurred while the inmate was escaped); *see Fichtner v. Iowa State Penitentiary*, 285 N.W.2d 751, 755 (Iowa 1979) (penitentiary could not impose penitentiary discipline on reformatory inmate for violation of reformatory rules where no statute or rule authorized such discipline). Because the discipline Mabrier has chal-

lenged here rests on actions that took place while he was escaped, the disciplinary committee had no authority under the DOC's rules to impose sanctions for these actions.

Mabrier also argues that the committee was without authority to discipline him because he did not have notice that he could be disciplined for conduct that occurred while he was on escape status. Because we have concluded that the committee did not have authority under its rules to discipline Mabrier for conduct while he was escaped, we need not address the notice issue.

## IV. *Restitution.*

Mabrier argues that the disciplinary committee had no authority to assess as costs the overtime wages of the guards who pursued him. In the alternative, he contends that even if the committee had the authority to require him to pay these expenses, his share of the costs was incorrectly calculated.

■ The DOC has statutory authority to enact a rule to assess as costs the expenses of the institution resulting from an inmate's rule violation. *Overton v. State,* 493 N.W.2d 857, 859–60 (Iowa 1992). Such a rule has been adopted by the DOC. The DOC's disciplinary policy authorizes prison officials to impose costs on inmates as part of their disciplinary sanction:

> An inmate may be assessed for the destruction or theft of property or *other costs related to the rule violation,* investigation, or hearing of reports....

(Emphasis added.) We conclude that the authority to assess "other costs related to the rule violation" includes authorization for the assessment of costs for overtime pay. Therefore, the disciplinary committee could properly require Mabrier to pay the overtime wages of the guards who pursued him.

■ Mabrier observes, however, that he was required to pay half of the overtime pay for all the time spent pursuing both Mabrier and Meyer. The authorities captured Mabrier within four to six hours after his escape. In contrast, the guards pursued Meyer for an additional twenty-some hours.

We agree that Mabrier should not be required to pay one-half the overtime for the time the guards spent looking only for Meyer. Where the institution can attribute its expenses to the conduct of a specific inmate, it should assess those expenses as costs only against that inmate. Consequently, the committee can only require Mabrier to pay half of the costs for the guards' overtime spent pursuing him and Meyer jointly. Overtime pay incurred in further efforts to capture Meyer after Mabrier was apprehended may not be assessed against Mabrier.

■ Mabrier also contends that the disciplinary committee could not assess the costs of replacing the plexiglass window and towing the truck as a sanction because Mabrier was not within the institution or in the physical custody of the Department of Corrections when he broke the window and stole the truck. Under the DOC's disciplinary policy, an inmate may be assessed for "costs *related to the rule violation....*" (Emphasis added.) We have already concluded that Mabrier's actions in breaking into the sawmill and stealing the truck did not violate the prison's disciplinary rules. Therefore, the committee did not have authority to assess costs associated with these actions against Mabrier.

## V. *Disposition.*

We conclude that the committee could not discipline Mabrier for conduct occurring while he was on escape status because the disciplinary rules do not encompass such conduct. Further, we hold that the committee incorrectly calculated Mabrier's share of the costs associated with the guards' overtime pay. Finally, we conclude that the committee did not have authority to order Mabrier to pay the costs associated with his actions while he was escaped.

Because part of the discipline and costs imposed upon Mabrier was due to the invalid rule violations, we remand this case to the district court. The district court should remand this case to the DOC with directions (1) to expunge from Mabrier's record the seven rule violations which were improper and (2) to reassess the sanctions and costs imposed by the prison disciplinary committee in light of this decision.

**REVERSED AND REMANDED.**