**Richard MATHIS, Appellant,**

v.

**STATE of Iowa, Appellee.**

No. 94–1870.

Supreme Court of Iowa.

March 20, 1996.

Philip B. Mears of the Mears Law Office, Iowa City, for appellant.

Thomas J. Miller, Attorney General, and William A. Hill, Assistant Attorney General, for appellee.

Considered by McGIVERIN, C.J., and LAVORATO, NEUMAN, SNELL, and TERNUS, JJ.

SNELL, Justice.

Appellant, Richard Mathis, seeks postconviction relief from an assessment of medical costs for injuries to a prison guard. We affirm in part and remand.

## I.  Factual and Procedural Background

On April 24, 1993, Richard Mathis, an inmate at the Iowa State Reformatory, assaulted a prison correctional officer by striking him in the face with his closed fist.  On April 30, 1993, Mathis received a copy of a disciplinary report filed on the basis of the incident.  The report contained no reference to the guard's medical bills or their amounts.  On May 4, 1993, Mathis appeared before the prison Adjustment Committee and was found guilty according to prison rules.  He was given thirty days disciplinary detention, 550 days level one disciplinary detention, and a

550 day deduction from good conduct time. He was also ordered to pay all medical costs associated with the incident. Because a substantial portion of the medical services needed by the guard were not yet known, Mathis was not then provided with an itemized account of the expenses.

Following completion of the prison disciplinary procedures, Mathis was prosecuted for the same incident in criminal court. He pled guilty to assault with serious injury and received a ten year sentence. He was ordered to make restitution in an amount between $1000 and $1500, the amount not reimbursed to the guard through workers' compensation.

Mathis took part in the appellate procedures available at the prison, Iowa Code section 903A.3(2), and eventually filed a postconviction relief petition under Iowa Code section 822.2(6) with the district court from the prison disciplinary hearing and received a postconviction trial. At this time, the department presented evidence of expenses totaling approximately $16,000 with over $9000 in medical expenses and $6000 in lost wages. The district court denied Mathis' claim for relief from the assessment of all of these expenses.

Mathis appeals the order of the district court in the prison disciplinary postconviction relief action upholding the department's assessment of medical costs, alleging the department was without the authority to assess costs reimbursed by workers' compensation, the department violated its own rules regarding the assessment of medical costs, and the assessment by the department was inappropriate in light of the pending criminal prosecution for the same incident. We affirm.

## II. Authority to Assess Restitution

■ Our review of postconviction relief rulings is for correction of errors of law. Iowa R.App.P. 4; *Giles v. State*, 511 N.W.2d 622, 626 (Iowa 1994). Mathis first raises the argument that the department did not have the authority to assess the guard's medical expenses and lost wages, at least to the extent they were reimbursed by workers' compensation insurance. Mathis claims that because of the reimbursement the depart-

ment did not directly incur any cost; therefore, it should not be allowed to assess these expenses to Mathis. The Department of Corrections clearly has the authority to assess the expenses an institution incurs as the result of an inmate's rule violations. *Overton v. State*, 493 N.W.2d 857, 859–60 (Iowa 1992). In this case, the department has adopted such a rule:

> An inmate may be assessed for destruction or theft of property, or other costs related to the rule violation, investigation, or hearing of reports. An itemized list of costs shall be attached to the decision with the inmate receiving a copy.

The Iowa courts have considered the authority to enact such rules and have upheld them where the department had incurred some sort of financial loss in connection with a violation. *Mabrier v. State*, 519 N.W.2d 84, 86 (Iowa 1994); *Overton*, 493 N.W.2d at 858–59; *Sauls v. State*, 467 N.W.2d 1, 3 (Iowa App.1990).

■ Mathis is correct in his statement the department must actually incur cost before an assessment may be made; however, application of the rule to this case does not change the result. Iowa courts have examined three situations in which assessment of costs to an inmate was appropriate. In *Sauls*, two inmates threatened to kill a third inmate. *Sauls*, 467 N.W.2d at 2. He was then placed in a protective, segregated area of the prison and was unable to work at his prison job. Because the segregation was not the result of any act of his own, rather, the acts of the other two prisoners, the prison continued to pay his customary daily wage as if he had been working all along. The court of appeals held assessment of the cost of the inmate's wages was proper. *Id.* at 3.

In *Overton*, this court upheld an assessment to a prisoner where a guard had been provided with eyeglasses to replace those broken in a scuffle with the prisoner. *Overton*, 493 N.W.2d at 858–59. In *Mabrier*, we extended this rule to cover the assessment of overtime pay incurred for guards in pursuit of an escapee. *Mabrier*, 519 N.W.2d at 86. *Mabrier* also challenged the calculation of his assessment, as he was charged with one-half

the expense of the guard's overtime even though he was apprehended much sooner than his fellow escaped prisoners. *Id.* We held this was improper and explained, "Where the institution can attribute its expenses to the conduct of a specific inmate, it should assess those expenses as costs only against that inmate." *Id.*

In the case at bar, Mathis argues that because the vast majority of the guard's expenses (lost wages and medical bills) were reimbursed by workers' compensation benefits, the department incurred no financial expense, and is without the authority to obtain an assessment against him. In this case, however, the record is clear the department expends substantial sums of money to secure workers' compensation coverage. Evidence was presented establishing that individual administrative departments of the state are assessed a particular premium for their workers' compensation coverage based on a rating formula. *See* Iowa Code § 19A.32 (1991). This amount is based on the state's actual cost of workers' compensation insurance for the particular department, which in turn is based on the number of claims made by the department. Therefore, the department does, in practical effect, make an expenditure each and every time a workers' compensation claim is made.

At the district court proceeding, evidence was presented establishing that Mathis' restitution payments for medical costs reimbursed by workers' compensation were sent directly to the workers' benefit fund. In this manner, the restitution appropriately reduced the premium rate to be calculated for the department. This is precisely the underlying purpose for the rule. As in *Mabrier,* because the increase in premiums may be directly associated with Mathis, it is within the authority of the department to assess this cost to Mathis in particular rather than the department as a whole. Because the department had undergone direct financial losses due to the actions of Mathis and the procedural restitution scheme devised by the department serves to compensate for this loss, we hold the action of the department was entirely appropriate and affirm the order of the district court on this issue.

### III. Violation of Rules for Assessment

■ Mathis next argues that even if the department did in fact have the authority to assess medical costs in this case, its action must be set aside because of a failure to precisely follow its own rules as to the imposition of such sanctions. The rule at issue is the same as that set out above. Here it is undisputed Mathis did not receive an itemized copy of medical expenses with the initial decision of the disciplinary body as required by the rule.

■ This alone, however, is not a sufficient basis on which to overturn the department's actions in assessing these costs to Mathis. The record indicates Mathis received notice of costs to be assessed. The costs at issue here, the guard's medical expenses, had not yet been incurred or even anticipated at the time Mathis claims he was entitled to notice and itemization. Mathis himself concedes in his brief that at the time of the discipline there was no way of knowing the guard would incur such substantial medical expenses. For this reason, we hold the action of the department in providing itemization at a later date, when the information actually became available, was appropriate. This should not be interpreted as precluding a party from challenging the amount at issue once it becomes known. In order to comport with traditional notions of due process, the department must afford Mathis an opportunity to challenge the amount of medical expenses once they become available. In a case such as this, the only way to satisfy this requirement is to remand to the Adjustment Committee for a hearing on the amount of medical expenses and their appropriate assessment to Mathis.

### IV. Pending Criminal Prosecution

■ Mathis also contends the prison disciplinary proceeding and the attendant sanctions were inappropriate because there was a pending criminal prosecution for the same matter. Mathis argues in particular that any sanctions imposed must be initiated under the framework of Iowa Code chapter 910, the statute establishing a scheme for victim restitution. He brings to our attention such dif-

ferences between chapter 910 and the department procedure as that chapter 910 has been construed to not allow restitution for amounts reimbursed by workers' compensation. *See State v. Wagner,* 484 N.W.2d 212, 217 (Iowa App.1992). Mathis also argues the procedures and amounts for withholding from the inmate's wages are different under chapter 910 and the department procedure. We see no conflict with the disciplinary procedures of the department and the later criminal prosecution for the same matter. It would be illogical to deprive the department of the opportunity to swiftly discipline inmates in a fair manner simply because a particular infraction rose to the level of a crime. It would also be counterproductive to the scheme of prison discipline to delay such procedures merely to await restitution in the criminal arena. Similarly, the two separate assessments, that by the department and that under the criminal statute, were established for entirely different purposes, the first to reimburse the state, the second to reimburse the victim. For this reason they may coexist even if they are not procedurally identical. Additionally, we will not permit the delay of swift prison disciplinary proceedings merely to await the conclusion of a criminal trial.

### V. Conclusion

Because Mathis failed to receive an opportunity to challenge the amount and propriety of specific medical costs assessed, we remand to the Adjustment Committee for determination of those issues. Because the remaining actions of the department were correctly within its authority and such actions had no conflict with the State's criminal prosecution of the matter, the order of the district court is affirmed in all other respects.

**AFFIRMED IN PART AND REMANDED.**