# IN THE COURT OF APPEALS OF IOWA

No. 14-0526
Filed July 22, 2015

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**JAMES ALLEN BREEN,**
        Defendant-Appellant.
_____


Appeal from the Iowa District Court for Linn County, Ian K. Thornhill, Judge.


James Breen appeals from a restitution order. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS.**


Mark C. Smith, State Appellate Defender, and Bradley M. Bender, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Linda J. Hines, Assistant Attorney General, and Jerry Vander Sanden, County Attorney, for appellee.


Considered by Danilson, C.J., Vaitheswaran, J., and Sackett, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2015).

**DANILSON, C.J.**

James Allen Breen appeals the restitution order following his conviction for attempt to commit murder, willful injury, and carrying weapons, in violation of Iowa Code sections 707.11, 708.4(1), and 724.4(1) (2011). Breen argues the district court erred in ordering restitution be paid to Tonja Forbes and St. Luke's Hospital, and in determining the amount of restitution to each of them. We conclude the court erred in ordering victim restitution be paid to Tonja Forbes and St. Luke's, as they are not victims as defined by Iowa Code section 910.1(5), but find substantial evidence to support the amount of restitution owed to the acknowledged victim, Cory Forbes. We affirm in part, reverse in part, and remand for a corrected order of restitution.

**I. Background Facts and Proceedings.**

Breen had known Cory Forbes for approximately four years on the night Breen ultimately shot Forbes three times—twice in the abdomen and once in the thigh. Forbes and Breen had been drinking together that night at Breen's home and left to join Forbes's girlfriend and her friends at a bar. Breen brought with him an Intratec 9mm semi-automatic handgun with a 30-round clip. Later, Breen wanted to leave the bar and asked Forbes's cousin, Sean Hiepler, for the keys to Hiepler's car. Breen and Hiepler began to argue and continued to do so until they agreed to "take" their dispute "outside." Breen left the bar first and walked around the corner of the building. When Hiepler followed, he discovered Breen with the handgun drawn and pointed at Hiepler's chest. Forbes had followed Hiepler out of the bar, and after Breen racked the slide of the handgun, Forbes tackled Breen. As Forbes and Breen were falling to the ground, Breen shot

Forbes three times—the last shot of which occurred with Breen on top of Forbes on the ground. Hiepler disarmed and subdued Breen, and the police were called. Forbes was transported by ambulance to St. Luke's.

As a result of the injuries caused by Breen, Forbes required emergency surgery in which two feet of his bowel and six to eight inches of his colon were removed. Forbes has lost the ability to control urination and bowel movement, has lost sexual function, and has experienced foot drop.[1] Forbes was required to stay in the hospital for approximately three weeks as a result of his injuries and surgery. Doctors have recommended Forbes receive physical therapy for his injuries. After being discharged from the hospital, Forbes moved in with his mother, Tonja, who has cared for him since that time and has purchased medical supplies for Forbes.

Breen was found guilty following a bench trial of attempt to commit murder, willful injury, and going armed with intent. On September 5, 2013, statements of pecuniary damages were filed for "victim(s)" Cory ($119,298.19 for medical bills) and Tonja ($1019.64 for medical supplies). On September 13, 2013, the district court entered its sentencing order.

A restitution hearing was held on March 7, 2014. Tonja testified she had paid in excess of $1019.64 for medical supplies to care for Forbes after his release from St. Luke's. The State presented highlighted receipts from Tonja, which supported her asserted purchases on behalf of Forbes's care. On cross-examination, Tonja acknowledged Forbes is twenty-nine years old and she is not legally responsible for his expenses.

---

[1] Foot drop is the inability to lift the front part of the foot, causing the toes to drag along the ground while walking.

Jenifer White, St. Luke's Director of Revenue Cycle, testified a "fair and accurate summation" of Forbes's medical expenses were included in an exhibit showing expenses for St. Luke's in the amount of $98,157.86.[2] White testified no payments had been made toward the amount due, there was no payment from any insurer, and collection efforts against Forbes had been made but no payment plan had been established.

The State maintained that the defendant was required to make restitution to "any person who has suffered pecuniary damages as a result of the defendant's actions" and argued Tonja and the hospital had suffered pecuniary damages. Defense counsel argued the "payment of restitution [is] solely to the direct victim" and the "victim in this case is Cory Forbes." The State responded:

> It's not uncommon for a Court to order that the Defendant pay restitution to a third-party, one who didn't actually suffer injury or harm [example given the Crime Victim Assistance Program]. The way that the definition of victim is set out in Chapter 910, I think, makes very clear that a victim can be anyone who has suffered a loss or pecuniary damages as a result of the Defendant's activity. And I believe that, under that definition, Miss Forbes and St. Luke's Hospital are proper victims for purposes of victim restitution in this case.

Defense counsel noted that Iowa Code section 910.1(5), which defines a victim for restitution purposes, specifically lists the Crime Victim Assistance Program.

On March 11, 2014, the district court entered a restitution order, setting out the pertinent statutory provisions and finding the State had met its burden to prove Breen's criminal conduct caused Tonja's pecuniary damages in the amount of $1019.64 and St. Luke's pecuniary damages of $98,157.86.

---

[2] The exhibit also contained entries for other medical providers to which Breen raised a foundation objection. The court sustained the objection as to all expenses but those of St. Luke's.

Breen appeals. He claims the district court erred by ordering restitution to Tonja and to St. Luke's because they are not "victims" as defined by Iowa Code section 910.1(5). He also argues the district court incorrectly determined the amount of restitution because the receipts offered by Tonja did not specify which items were for Forbes's care and because the hospital summary did not itemize the care given to Forbes. Breen argues such itemization is required to determine which aspects of Forbes's care were causally related to Breen's criminal act.

**II. Scope and Standard of Review.**

We review the district court's restitution order for errors at law. *State v. Hagen,* 840 N.W.2d 140, 144 (Iowa 2013). "Questions of statutory interpretation also are reviewed for correction of errors at law." *Id.* When reviewing a restitution order, "we determine whether the court's findings lack substantial evidentiary support, or whether the court has not properly applied the law." *State v. Bonstetter*, 637 N.W.2d 161, 165 (Iowa 2001). Evidence is substantial when a reasonable mind would accept it as adequate to reach a conclusion. *Id.*

**III. Discussion.**

Iowa law requires, "In all criminal cases . . . upon which a judgment of conviction is rendered, the sentencing court shall order that restitution be made by each offender to the victims of the offender's criminal activities . . . ." Iowa Code § 910.2(1); *see also id.* § 910.3 ("At the time of sentencing or at a later date to be determined by the court, the court shall set out the amount of restitution . . . and the persons to whom restitution must be paid. If the full amount of restitution cannot be determined at the time of sentencing, the court shall issue a temporary order determining a reasonable amount for restitution identified up to that time.

At a later date as determined by the court, the court shall issue a permanent, supplemental order, setting the full amount of restitution. The court shall enter further supplemental orders, if necessary. These court orders shall be known as the plan of restitution.").

**A. Who is a "victim" under Iowa Code section 910.1(5).** Generally, when ordering restitution, a court must first identify the victim entitled to restitution. *Bonstetter*, 637 N.W.2d at 165. A victim is defined as "a person who has suffered pecuniary damages as a result of the offender's criminal activities." Iowa Code § 910.1(5). Both the State and Breen acknowledge Forbes is a victim entitled to restitution.

"Pecuniary damages" are defined by statute; the phrase means "all damages to the extent not paid by an insurer, which a victim could recover against the offender in a civil action arising out of the same facts or event." *Id.* § 910.1(3). "The words used by the legislature to define 'pecuniary damages' clearly indicate a legislative intent that restitution to a victim depend on what the victim could obtain in a civil action against the defendant." *State v. Paxton*, 674 N.W.2d 106, 108 (Iowa 2004).

Generally, courts have upheld restitution to victims only where direct economic loss resulted from the criminal activity. In *State v. Knudsen*, the State provided a guardian ad litem for a child victim and argued the State was entitled to restitution from the defendant for the cost off the guardian ad litem. 746 N.W.2d 608, 609 (Iowa Ct. App. 2008). However, the court rejected the State's argument, noting the cases in which the State received restitution from the defendant, the State was found to have suffered direct economic losses. *Id.* at

610; *see, e.g.*, *State v. Tesch*, 704 N.W.2d 440, 452 (Iowa 2005) (finding the State and an individual were victims where the defendant destroyed traffic warning devices resulting in the individual's injury); *State v. Taylor*, 506 N.W.2d 767, 769 (Iowa 1993) (requiring defendant to pay for an audit when defendant embezzled money from a State university); *State v. Wagner*, 484 N.W.2d 212, 214 (Iowa Ct. App. 1992) (requiring the defendant to pay restitution for damage to a prison caused by riot).

This principle has also been applied to private parties who have suffered direct economic losses as a result of the defendant's criminal activity. *See, e.g.*, *State v. Schares*, 548 N.W.2d 894, 896 (Iowa 1996) (holding that an archdiocese was a victim when it reimbursed church for defendant's misappropriation of funds); *State v. Hennenfent*, 490 N.W.2d 299, 300 (Iowa 1992) (concluding that a bank is a victim when the defendant cashes forged checks of the bank's depositors); *State v. Stessman*, 460 N.W.2d 461, 464 (Iowa 1990) (finding that General Motors was a victim when agent car dealership performed repairs on defendant's vehicle, and General Motors reimbursed the dealership due to defendant's deception concerning the odometer reading).

The latter cases may seem to support the district court's decision to order restitution directly to Tonja and St. Luke's; however, in each of the latter cases the second party had a duty to reimburse the first party for the economic losses, and each of the parties the court identified as a victim could have recovered damages from the defendant in a civil action. Forbes's pecuniary damages stem from medical expenses incurred as a result of being shot by Breen, but neither Tonja nor St. Luke's has a duty to reimburse Forbes for those medical expenses.

Here, neither Tonja nor St. Luke's suffered economic losses as a *direct result* of Breen's criminal activity, and neither Tonja nor St. Luke's could recover against Breen in a civil action. Tonja and the hospital suffered losses because Forbes failed to pay or reimburse them for their services or costs incurred. Because they could not recover against Breen in a civil action, Tonja and St. Luke's are not victims as defined by Iowa Code section 910.1(5).

The State concedes that Forbes is the only victim in this case who has the ability to obtain a civil judgment against Breen. Nonetheless, the State argues we should allow the district court's order to stand because "for all practical purposes the district court's order of restitution requires Breen to pay amounts to Tonja Forbes and St. Luke's for pecuniary damages that he would be required to pay his victim, Cory Forbes." The State argues further that should this case be remanded, Breen would be ordered to pay the same amounts to Forbes, and reversal of the order would be time consuming and make no substantive difference to Breen.

"Restitution is purely a creature of statute in Iowa." *Earnest v. State*, 508 N.W.2d 630, 633 (Iowa 1993). We are not free to broaden Iowa Code section 910.1(5) to cut out the "middle man"—we are limited to the language of the statute. *See State v. Monroe*, 236 N.W.2d 24, 36 (Iowa 1975) ("[I]f changes to a law are desirable from a standpoint of policy or mere practicality, it is for the legislature to enact them, not for the court to incorporate them by interpretation."). "A judgment of restitution may be enforced by the state, a victim entitled under the order to receive restitution, a deceased victim's estate, or any other beneficiary of the judgment in the same manner as a civil judgment." Iowa

Code § 910.7A(2).  This court cannot ignore the plain language of Iowa Code sections 910.2(1) and 910.1(5) requiring restitution be paid to the victim of the offender's criminal activity.  Thus, the district court erred in ordering restitution to be paid to Tonja and St. Luke's instead of Forbes.

**B. Amount of damages.**  "Once the victim is identified, the court must determine what losses may be considered in calculating the amount of restitution.  Any damages that are causally related to the criminal activities may be included in the restitution order."  *See Bonstetter*, 637 N.W.2d at 165.  The statute allows recovery of "all damages" the State can prove by a preponderance of the evidence.  *Wagner*, 484 N.W.2d at 216.  Preponderance of the evidence means "a probability assessment of more likely than not."  *Backstrom v. Iowa Dist. Ct.*, 508 N.W.2d 705, 711 (Carter, J., dissenting) (citing *Carpenter v. Security Fire Ins. Co.*, 168 N.W. 231 (Iowa 1918)).

We find *State v. Edouard*, 854 N.W.2d 421 (Iowa 2014), useful in determining whether the State met the preponderance of evidence standard in proving Forbes's damages.  In that case, Edouard claimed that because the State's witness had no firsthand knowledge that the treatment received by the victims could be linked to his criminal conduct, the State did not show a causal connection between the damages and the criminal conduct.  *Edouard*, 854 N.W.2d at 450.  He argued the State could not show a causal connection by calling a witness who brought in paperwork completed by others.  *Id.*  In that case, the witness testified the manner in which the paperwork was generated and testified that each mental health or medical provider also filled out a verification form indicating whether the treatment was related to the crime.  *Id.*

Edouard did not present any contrary evidence but relied on cross-examination to discredit the evidence. *Id.* In response to Edouard's argument, the Iowa Supreme Court stated "[w]e do not believe restitution proceedings are subject to strict rules of evidence." *Id.* The supreme court upheld the district court's conclusion that the mental health care costs charged to Edouard were incurred "as a direct result" of Edouard's crimes. *Id.* at 451.

In the present case, the State similarly offered testimony of a St. Luke's employee regarding paperwork completed by others pertaining to the medical care Forbes received. The State also offered testimony of Tonja regarding receipts she kept in purchasing medical supplies for Forbes. As in *Edouard*, Breen offered no contrary evidence for the court to examine, relying exclusively on cross-examination to discredit the State's evidence.

The record provides substantial evidence to support the district court's conclusions as to the amount of pecuniary damages sustained. White's testimony and the court exhibit provided an accurate summation of Forbes's St. Luke's medical expenses in the amount of $98,157.86. Tonja's testimony and receipts support additional medical expenses for Forbes in the amount of $1019.64. We find that the district court's determination of the amount of damages was supported by substantial evidence. We remand for the district court to enter a corrected order of restitution reflecting that the full sum of $99,176.77 be paid to Forbes consistent with this opinion.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS.**